**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

RICHARD GLEINN and PHYLLIS GLEINN,
CARY TOONE, JOHN CELLI and MARIA CELLI,
EVA MEIER, GEORGIA MURPHY, STEVEN J.
RUBINSTEIN and TRACEY F. RUBINSTEIN, as
trustees for THE RUBINSTEIN FAMILY LIVING
TRUST DATED 6/25/2010, BERTRAM D.
GREENBERG, as trustee for THE GREENBERG
FAMILY TRUST, BRUCE R. HANNEN and
GERALDINE MARY HANNEN, ROBERT
COBLEIGH, RORY O'NEAL and MARCIA O'NEAL,
and SEAN O'NEAL, as trustee for THE O'NEAL
FAMILY TRUST DATED 4/6/2004, individually and
on behalf of others similarly situated,

Case No.: 8:20-cv-01677-MSS-CPT

      Plaintiffs,

v.

PAUL WASSGREN, an individual; DLA PIPER (US),
a limited liability partnership and FOX ROTHSCHILD
LLP, a limited liability partnership,

      Defendants.

_____/

**DEFENDANT FOX ROTHSCHILD LLP'S**
**MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT**
**AND MEMORANDUM OF LAW IN SUPPORT**

William J. Schifino, Jr.
wschifino@gunster.com
David R. Atkinson
datkinson@gunster.com
Lauren V. Purdy
lpurdy@gunster.com
Justin P. Bennett
jbennett@gunster.com
Gunster, Yoakley & Stewart, P.A.
401 East Jackson Street, Suite 2500
Tampa, Florida 33602
(813) 228-9080; Fax: (813) 228-6739
*Counsel for Fox Rothschild LLP*

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................... 1

PLEADED FACTS ................................................................................................... 2

PLEADING STANDARDS ....................................................................................... 4

ARGUMENTS & AUTHORITIES ............................................................................ 5

I.   Plaintiffs' Common Law Claims Fail Under Rules 12(b)(6) And 9(b) ............................. 5

    A.   Plaintiffs Fail To Satisfy The Particularity Requirement Of Rule 9(b) For Counts I-III, V, VI, XXII, XXIII, XXVI-XXVIII & XX-XXI ........................... 5

    B.   Plaintiffs' Aiding And Abetting Fraud Claims Fail ......................................... 7

        i.   Count I (Florida), Count VI (California), Count XII (Arizona), Counts XVII and XVIII (Colorado) And Count XXI (Nevada) Fail ................................. 7

           1.   Plaintiffs Fail To Allege Substantial Assistance ................................. 7

           2.   Plaintiffs Fail To Plausibly Allege Actual Knowledge .................... 10

    C.   Plaintiffs' Aiding And Abetting Breach Of Fiduciary Duty Claims Fail ............ 12

        i.   Count II (Florida), Count V (California), Count XIII (Arizona), Count XVI (Colorado) And Count XX (Nevada) Fail ................................. 12

           1.   Plaintiffs Fail To Allege Wassgren's Actual Knowledge Or Substantial Assistance ...................................................................... 12

           2.   Plaintiffs Fail To Allege A Breach Of Fiduciary Duty ..................... 13

        ii.   Count V (California) Also Fails Because Plaintiffs Do Not Allege Personal Gain ................................................................................................. 16

    D.   Plaintiffs' Florida Civil Conspiracy Claim (Count III) Fails ................................ 17

II.   Plaintiffs' Blue Sky Laws Claims Fail (Counts IV, IX-XI, XIV, XV & XIX) ................. 18

    A.   Plaintiffs' Claims Fail Under The California Securities Law (Count IV) ............ 19

        i.   Plaintiffs' Section 25210(b) Claim Fails ................................................. 19

        ii.   Plaintiffs' Section 25110 Claim Fails ................................................. 19

        iii.   Plaintiffs' Section 25401 Claim Fails ................................................. 21

    B.   Plaintiffs' Claims Fail Under the Arizona Securities Act (Counts IX, X & XI) ........................................................................................................... 21

    C.   Plaintiffs' Claims Fail Under The Colorado Securities Act (Count XIV & XV) ............................................................................................................ 22

    D.   Plaintiffs' Claims Fail Under The Nevada Securities Act (Count XIX) .............. 23

III.   Plaintiffs' Fail To Plead Scienter (In Part, Counts IV, XI, XIV & XIX) ........................ 25

IV.  All Named Plaintiffs' Claims Fail As To Fox (All Counts) ............................. 25

    A.  Fox Is Not Liable For Any Damages Arising *After* Wassgren Left Fox ............. 25

    B.  Fox Is Not Liable For Damages Of Investors Whose Principal Was
        Returned ........................................................................................................ 26

    C.  Fox Is Not Liable For Damages Caused By A Superseding Cause ..................... 27

V.  Statutes Of Repose Bar Or Significantly Reduce Plaintiffs' Blue Sky Law Claims ........ 28

    A.  California (Count IV) ....................................................................................... 28

    B.  Arizona (Counts IX & X) ................................................................................. 30

    C.  Colorado (Counts XIV & XV) .......................................................................... 30

    D.  Nevada (Count XIX) ....................................................................................... 32

VI.  Plaintiffs' Claims Under California's Unfair Competition Law Fail (Count VIII) ........... 32

VII. Plaintiffs' Claims Under The Nevada Deceptive Trade Practices Act Fail (Counts
    XXII & XXIII) ...................................................................................................... 33

VIII. Plaintiffs' Claims Under The Elder Abuse Act Fail (Count VII) ................................. 34

IX.  Plaintiffs' Blue Sky Law Registration Claims Fail Under NSMIA (In Part, Counts
    IV, IX, XV & XIX) ............................................................................................... 35

CONCLUSION ............................................................................................................ 35

Defendant Fox Rothschild LLP ("Fox"), pursuant to F.R.C.P. 9(b) and 12(b)(6), moves this Court to dismiss Plaintiffs' Amended Class Action Complaint. DE 13.

## INTRODUCTION

This putative class action, secondary liability-theory lawsuit, was filed as a result of an SEC enforcement action brought against EquiAlt, LLC ("EquiAlt"), a real estate investment company, and its principals, Brian Davison and Barry Rybicki, for perpetrating an alleged Ponzi scheme by selling $170 million in unregistered securities to over 1,100 investors. This Court has already appointed a receiver over the EquiAlt entities and directed him to marshal and recover assets for the benefit of EquiAlt's investors. Plaintiffs are persons from Florida, California, Arizona, Colorado and Nevada who allegedly purchased EquiAlt securities from unlicensed sales agents working on behalf of EquiAlt. Defendants are Paul Wassgren, the lawyer who represented EquiAlt, and Fox and DLA Piper (US) ("DLA"), the law firms that employed Wassgren.[1]

At bottom, Plaintiffs contend that if a client commits fraud, the outside lawyer ***must have*** known about it and ***must have*** provided material assistance to support it. This theory requires acceptance of the dubious notion that over the course of nearly a decade, Wassgren risked his livelihood and professional reputation by knowingly and materially aiding his client's fraudulent activity, in exchange for only standard legal fees. Plaintiffs' pleading strategy of liability by implication does not meet the pleading requirements of Rules 9(b) and 12(b)(6), or under the applicable state blue sky laws.[2] As such, the Amended Complaint should be dismissed.

---

[1] The Receiver has sued Defendants in federal court in California in Case No. 2:20-cv-08849; *Burton W. Wiand, as Receiver on behalf of EquiAlt Fund LLC, et al. v. Paul R. Wassgren, et al.* (C.D. Cal.). Another putative class action brought by a different set of plaintiff counsel is pending as well, case no. 3:20-cv-07719-LB, *Robert G. Mar, Individually and on Behalf of All Others Similarly Situated v. Benjamin Charles Mohr, et al.* (N.D. Cal.).

[2] Curiously, Plaintiffs have not undertaken the necessary labor to sue the sales agents who made the allegedly false representations that induced them to purchase the EquiAlt securities in the first place; seeking, instead, to focus their attention on the "deep pockets" of national and highly-respected law firms.

## PLEADED FACTS

EquiAlt is a Nevada limited liability company that was formed in 2011 by its CEO, Davison, and its Managing Director, Rybicki. DE 13, ¶¶ 21-24, 29. It represented to investors that substantially all of their invested funds would be used to purchase, rehabilitate, and sell single-family homes located in distressed markets around the United States. *Id.* ¶ 29. To raise money, Davison and Rybicki formed a series of funds through which investors would purchase EquiAlt securities. *Id.* ¶ 31. Plaintiffs allege Davison and Rybicki began promoting the sale of EquiAlt's securities through a network of unlicensed sales agents "[s]hortly after EquiAlt was formed in 2011." *Id.* ¶ 32.

Wassgren served as EquiAlt's outside counsel and left Fox to join DLA in 2017. *Id.* ¶¶ 36-37. While at Fox, Wassgren provided routine corporate transactional advice to EquiAlt relating to state and federal securities laws and corporate disclosures. *Id.* ¶ 36, 40. For example, he prepared articles of incorporation for various EquiAlt-related entities. *Id.* ¶¶ 40, 83, 88, 95, 104. He drafted and reviewed Form Ds and submitted them to the SEC, and prepared offering documents for debenture funds claiming exemption from registration. *Id.* ¶¶ 42, 66, 82. He prepared private placement memoranda ("PPM"), subscription agreements, the finder's fee agreement, and prospective purchaser questionnaires. *Id.* ¶¶ 40, 42. Underscoring that he believed EquiAlt was a legitimate company, he permitted Fox's name to be referenced on the PPMs and in marketing materials. *Id.* ¶¶ 45, 46. When Arizona opened an investigation into EquiAlt in 2013, Wassgren and another Fox lawyer provided legal representation. *Id.* ¶¶ 98-99. The Amended Complaint implicitly concedes no action was taken by Arizona authorities as a result of that investigation. *Id.*

2

According to the SEC, EquiAlt devolved into a Ponzi scheme sometime in 2016 while Davison and Rybicki allegedly misused EquiAlt funds.[3] The SEC has not concluded the alleged masters of the fraud, Davison and Rybicki, set out to create a Ponzi scheme from the start. Yet Plaintiffs, who selectively rely on SEC materials throughout their Amended Complaint, assert EquiAlt was a Ponzi scheme from the very beginning and that Davison and Rybicki "could not have perpetuated the massive fraudulent Ponzi scheme without" Wassgren's "active assistance and participation." *Id.* ¶¶ 1, 2. Much of the rest of the Amended Complaint recounts the alleged wrongdoing perpetrated by Davison and Rybicki. *Id.* ¶¶ 4-5, 21-25, 29-35, 44, 52, 56, 82-84, 88.

As to Wassgren's alleged actions while at Fox, the Amended Complaint contains largely naked assertions of misconduct:[4] (1) he prepared false SEC filings, though there is no plausible allegation he knew they were false, (2) he prepared false PPMS and marketing materials, with no plausible allegations regarding when and how he knew they contained false statements, (3) he "orchestrated" the creation of separate investment funds to conceal the number of non-accredited investors, though the use of multiple funds is not inherently nefarious, (4) he developed a strategy to characterize sales agents as consultants to avoid licensing requirements, though providing legal advice to legitimately avoid a regulatory requirement is not evidence of misconduct, and (5) he "knew" EquiAlt exceeded the limit of sales of unregistered securities issued by the EquiAlt funds to unaccredited investors because the questionnaires were addressed to the EquiAlt entity with "c/o" Fox or DLA, although "c/o" does not demonstrate Wassgren ever received them. *Id.* ¶¶ 43, 46, 47, 51, 85, 87. Plaintiffs also claim, without any plausible facts, that Wassgren provided free legal advice directly to Rybicki's sales agents telling them they could sell EquiAlt securities as unlicensed agents. *Id.* ¶¶ 54-56.

---

[3] DE 138, SEC Am. Comp., at ¶¶ 48 & 52; DE 173, SEC July 31, 2020 Transcript, at p. 48.
[4] Fox adopts the further explanation of the following issues referenced by DLA's motion to dismiss at Section I.A.

In 2019, long after Wassgren left Fox, the SEC began investigating EquiAlt. On February 11, 2020, the SEC sued Davison and Rybicki for securities fraud and appointed a receiver over the EquiAlt entities. This lawsuit followed.

## PLEADING STANDARDS

"[T]o survive a motion to dismiss under [Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be well-pled, the allegations must consist of more than mere labels, legal conclusions, or a "formulaic recitation of the elements of a cause of action." *Id.* at 678. Bare legal conclusions are "not entitled to the assumption of truth." *Id.* at 679. A complaint is deficient if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.*[5]

Rule 9(b)'s heightened pleading standard is as follows:

(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)).

This standard applies to claims for aiding and abetting fraud and conspiracy claims alleging conspirators agreed to commit fraud. *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1064-65 (11th Cir. 2007) (recognizing both aiding and abetting fraud and conspiracy to

---

[5] If "an attached document negates a pleader's cause of action, the plain language of the document will control." *Ship Const. & Funding Servs. (USA), Inc. v. Star Cruises PLC*, 174 F. Supp. 2d 1320, 1326 (S.D. Fla. 2001).

commit fraud subject to heightened pleading standard). It applies to aiding and abetting breach of fiduciary duty claims rooted in fraud as well. *Yuanxiao Feng v. Walsh*, 2020 WL 5822420, at *15 (S.D. Fla. Sept. 14, 2020). A claim is rooted in fraud if it is premised on a course of fraudulent conduct. *Ctr. for Individual Rights v. Chevaldina*, 2018 WL 1795470, at *7 (S.D. Fla. Feb. 21, 2018) (recognizing Rule 9(b) applied to breach of fiduciary duty claims).

Allegations a lawyer provided legal services and thus must have known about and furthered his client's wrongdoing do not meet the requirements of Rules 9(b) and 12(b)(6). *See, e.g.*, *Domanus v. Locke Lord LLP*, 847 F.3d 469, 479-80 (7th Cir. 2017); *RSM Produc. Corp. v. Freshfields Bruckhause Deringer U.S. LLP*, 682 F. 3d 1043, 1051-52 (D.C. Cir. 2012).

<u>**ARGUMENTS & AUTHORITIES**</u>

I.      **Plaintiffs' Common Law Claims Fail Under Rules 12(b)(6) And 9(b)**

        A.      **Plaintiffs Fail To Satisfy The Particularity Requirement Of Rule 9(b) For Counts I-III, V, VI, XXII, XXIII, XXVI-XXVIII & XX-XXI**

Plaintiffs' common law claims are subject to the heightened pleading requirement of Rule 9(b); and none of them meets this standard. Rejecting the conclusory contentions that Wassgren "orchestrated" and "knew" about the Ponzi scheme, Plaintiffs' factually allege: because Wassgren provided legal advice to EquiAlt over a long period of time, prepared its SEC filings, PPMs and articles of incorporation, Wassgren *must* have known and participated in Davison and Rybicki's scheme. However, providing ordinary professional services does not give rise to a specific allegation or inference of fraud. *See, e.g.*, *Cordell Consultant, Inc. Money Purchase Plan and Tr. v. Abbott*, 2012 WL 13148744, at *5 (S.D. Fla. July 11, 2012) (no liability for "ordinary activity of a lawyer"); *In re Allstate Life Ins. Cor. Litig.*, 2013 WL 2474508 (D. Ariz. 2013) (performing audit in ordinary course of business does not create liability).

5

The Amended Complaint is rife with conclusory allegations of wrongdoing unsupported by facts or logic. For example, while the Amended Complaint alleges the PPMs falsely stated no more than 35 unaccredited investors would invest in a particular fund, DE 13, ¶ 47, there is no specific allegation that at the time Wassgren allegedly prepared the PPMs, he had the clairvoyance to know his clients intended to disregard federal law and seek out more unaccredited investors than permitted or even that they would succeed in doing so. DE 13-1, at 379. Plaintiffs also claim Wassgren "knew" EquiAlt was "soliciting investments from the general public through cold-calling campaigns, social media, websites," etc. and that EquiAlt did not meet the requirement that non-accredited investors be supplied with financial reports and other Rule 502(b) information. DE 13, ¶¶ 71, 73. But, the Amended Complaint does not plead any facts that Wassgren while at Fox knew how EquiAlt was communicating with potential investors or that EquiAlt was not providing required materials.

Additionally, each of the common law claims requires specific allegations of causation and damage. *See, e.g.*, *Worldspan Marine Inc. v. Comerica Bank*, 2020 WL 1238732, at *14 (S.D. Fla. Feb. 27, 2020); *Chang v. Wells Fargo Bank, N.A.*, 2020 WL 1694360, at *7 (N.D. Cal. Apr. 7, 2020).[6] Yet, Plaintiffs do not specifically allege when and how they were induced to purchase EquiAlt securities or how any allegedly knowing misconduct by Wassgren caused their loss. For example, Plaintiffs do not explain how any allegedly false marketing materials or PPMs allegedly drafted by Wassgren while he was employed by Fox induced the investors to purchase EquiAlt securities. Rather, the crux of Plaintiffs' claim is that it was the conduct of the sales

---

[6] The Restatement (Second) of Torts 876 cmt. to clause (b) provides that substantial assistance requires "legal cause." The Restatement has been adopted by each of the above-referenced jurisdictions. *See Wiand v. Wells Fargo, N.A.*, 938 F. Supp. 2d 1238, 1246-47 (M.D. Fla. 2013*); Allen v. Am. Capital Ltd.*, 287 F. Supp. 3d 763, 807 (D. Ariz. 2017); *Kirzner v. Silverstein*, 2010 WL 2985615, at *11 n.13 (D. Colo. July 23, 2010); *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1119 (C.D. Cal. 2003); *McNamara v. Intercept Corp.*, 2020 WL 1531375, at *10-11 (D. Nev. March 31, 2020).

agents—not Wassgren—that caused them to purchase the securities. DE 13, ¶ 34. And any alleged misrepresentation or other fraudulent conduct by the sales agents, such as recruiting unaccredited investors, was a superseding cause of Plaintiffs' damages for which Fox is not liable at any rate.

### B.  Plaintiffs' Aiding And Abetting Fraud Claims Fail

#### i.  Count I (Florida), Count VI (California), Count XII (Arizona), Counts XVII and XVIII[7] (Colorado) And Count XXI (Nevada) Fail

The elements for aiding and abetting fraud are: (1) the aider and abettor had knowledge of the underlying fraud, (2) the aider and abettor substantially assisted or encouraged commission of the fraud, and (3) injury resulted from the alleged misconduct. *Worldspan Marine Inc. v. Comerica Bank*, 2020 WL 1238732, at *14 (S.D. Fla. Feb. 27, 2020).[8] Even assuming underlying violations by EquiAlt, the claims against Wassgren and the law firms fail because Plaintiffs have not sufficiently alleged particularized or even plausible facts that: (1) Wassgren knew of EquiAlt's fraudulent conduct, and (2) he rendered substantial assistance to EquiAlt or sales agents in their purported wrongdoing. *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1065 (11th Cir. 2007).

#### 1.  Plaintiffs Fail To Allege Substantial Assistance

"Substantial assistance occurs when a defendant affirmatively assists, helps conceal, or fails to act when required to do so, thereby enabling the breach to occur." *Groom v. TD Bank,*

---

[7] Plaintiffs' claim for aiding and abetting intentional misrepresentation additionally fails because Colorado does not recognize such a claim. *Medved v. DeAtley*, 2013 WL 4873054, at *8 (D. Colo. Sept. 11, 2013) (plaintiff failed to provide case law demonstrating aiding and abetting fraudulent misrepresentation was cognizable under Colorado law). It appears the terms "intentional misrepresentation" and "fraudulent misrepresentation" are interchangeable under Colorado law. *Kachadoorian v. United Airlines, Inc.*, 2018 WL 10609655 (D. Colo. Sept. 12, 2018).

[8] *See also Facebook, Inc. v. MaxBounty, Inc.*, 274 F.R.D. 279, 285 (N.D. Cal. 2011); *Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 23 (Ariz. 2002) (en banc); *Stern v. Charles Schwab & Co.*, 2010 WL 1250732, at *8 (D. Ariz. March 24, 2010); *Wisdom v. United States*, 2010 WL 3981712, at *7 (D. Nev. Oct. 8, 2010); *Sender v. Mann*, 423 F. Supp. 2d 1155, 1175-76 (D. Colo. 2006). For the purposes of page limitations and the preeminent pleadings deficiencies in the Amended Complaint only, Fox addresses the failure to plead substantial assistance and actual knowledge as to all state law claims together. Fox does not concede that each states' laws concerning aiding and abetting fraud is similar in all relevant respects.

*N.A.*, 2012 WL 12906533, at *4 (M.D. Fla. Apr. 30, 2012); *Johnson v. Branch Banking & Trust Co.*, 2015 WL 13791141, at *6 (M.D. Fla. Sept. 16, 2015) (definition of "substantial assistance" applied in the context of aiding and abetting fraud). In other words, substantial assistance requires more than providing mere legal services for a client or "conducting activities that make up the daily grist of the mill." *In re Cascade Intern. Securities Litig.*, 840 F. Supp. 1558, 1566 (S.D. Fla. 1993), *on reconsideration*, 894 F. Supp. 437 (S.D. Fla. 1995). Plaintiffs fail to allege substantial assistance for four reasons.

*First*, it is axiomatic that a lawyer's provision of legal services to a client is insufficient to state a claim for aiding and abetting fraud. *See, e.g.*, *Cordell Consultant, Inc. Money Purchase Plan and Tr. v. Abbott*, 2012 WL 13148744, at *5-7 (S.D. Fla. July 11, 2012) (granting motion to dismiss relating to aiding and abetting fraud claims against a lawyer in an action involving a Ponzi scheme); *Schatz v. Rosenberg*, 943 F.2d 485, 497 (4th Cir. 1991) (finding that a lawyer does not aid and abet fraud by merely drafting documents). To the extent Plaintiffs' claims are premised on Wassgren's provision of ordinary legal services, they fail as a matter of law.

*Second*, Fox is not liable to EquiAlt investors for Wassgren failing to disclose allegedly false information in the various offering documents, particularly where Plaintiffs fail to plausibly allege he even knew the information was false—or would be false "in the future." It is well-settled that an attorney is not liable for his client's misdeeds simply by virtue of providing legal advice that is disregarded. *See Silva v. Potter*, 2006 WL 3298543, at *5 (M.D. Fla. Sept. 25, 2006) ("A client is not required to heed all of her attorney's advice but may disregard it and suffer the consequences."); *Hicks v. Lewis,* 904 F. Supp. 1368, 1370 (M.D. Fla. 1995); *Pickard v. Maritime Holding Corp.*, 161 So. 2d 239, 241 (Fla. 3d DCA 1964) ("[A]n attorney acting under employment, at the direction of his client and in legal manner is not liable for the consequences

of his client's actions"). Nor is an attorney required to independently verify that his client has followed his advice, or investigate his client's transactions in the course of providing ordinary legal services. *Angell v. Allergan Sales, LLC*, 2019 WL 3958262, at *1 (M.D. Fla. Aug. 22, 2019). This is true even if the client's activity may be suspicious. *Id.*

Plaintiffs allege the PPMs, marketing materials and other offering documents contain misrepresentations that were false at the time they were created. DE 13, ¶¶ 40-47. Beyond asserting in conclusory fashion that Wassgren must have known when the documents were drafted that his clients would not follow the law and his advice, there are no allegations explaining how he would know that. For example, Plaintiffs do not explain how he knew more than 35 unaccredited investors would invest in any particular EquiAlt fund, *Id.* ¶ 43, or that Davison and Rybicki would not utilize registered broker/dealers. *Id.* There is no particular or specific allegation as to how Wassgren knew Davison and Rybicki would "pocket discount fees" or "pay [themselves] undisclosed fees and bonuses." *Id.* Most importantly, nowhere do Plaintiffs explain why Wassgren would knowingly prepare offering documents and SEC filings with not only egregious falsehoods but also knowing his clients were committing ongoing fraudulent acts. Without some explanation for Wassgren's motive to jeopardize his professional livelihood, Plaintiffs' unsupported contentions are not plausible and do not meet the requisite specificity. *See Iqbal*, 129 S. Ct. at 1949 (allegations "merely consistent with" liability do not suffice).

*Third*, Plaintiffs' alleged communications with sales agents are not plausible and lack the required particularity and specificity, in part because the allegations are often contradictory and confusing. For example, Plaintiffs allege Wassgren routinely gave free legal advice to various, unidentified sales agents that they could sell unregistered EquiAlt securities without being licensed. DE 13, ¶¶ 49-50, 54-57. Despite being a centerpiece of Plaintiffs' allegations of

9

Wassgren's alleged wrongdoing, Plaintiffs provide no specificity identifying each of the sales agents receiving the advice, when they received it, or what Wassgren told them.[9] Yet, in one of only two examples of specific allegations regarding Wassgren's interactions with any sales agents, Plaintiffs allege Wassgren gave sales agent John Freidrichsen the opposite advice: that he needed to obtain his "Series 7 license to sell debentures for the REIT Fund." *Id.* ¶ 56. Plaintiffs also confusingly allege Wassgren drafted an indemnification provision in the sales agents' Finder's Fee Agreements to provide for indemnification "of both the EquiAlt fund and the agent" arising from the sales agent's failure to register as a broker-dealer as required by state and federal law. *Id.* ¶ 50. The Finder's Fee Agreement to the Amended Complaint does not say that. DE 13-2, at 115. It requires the sales agent to indemnify EquiAlt for his or her failure to register as a broker-dealer when required. The actual indemnification provision in the Finder's Fee Agreement, along with Plaintiffs' own allegation that Wassgren advised a sales agent to obtain the required licensing, undermines the plausibility of Plaintiffs' conclusory allegations.

*Fourth*, Plaintiffs have failed to plausibly allege with the required particularity and specificity that any action or inaction by Wassgren was the proximate cause of Plaintiffs' injury. *See Worldspan Marine*, 2020 WL 1238732, at *14 ("Aiding and abetting fraud is a tort in Florida and like all torts, additionally requires a plaintiff to demonstrate injury resulting from the alleged misconduct."). The Amended Complaint is devoid of allegations connecting the communications or advice between Wassgren and any sales agent to Plaintiff's damages.

## 2.    Plaintiffs Fail To Plausibly Allege Actual Knowledge

Plaintiffs also fail to meet the heavy burden to allege with specificity that Wassgren had actual knowledge of the alleged fraudulent activities of EquiAlt or the sales agents.

---

[9] The only example even identifying a sales agent receiving this purported advice is contained in Paragraph 55. DE 13, 55. Even there, Plaintiffs fail to plead when Wassgren provided the advice as required by Rule 9(b).

The actual knowledge requirement may be established by either direct or circumstantial evidence; however, the circumstantial evidence must demonstrate that the aider and abettor actually knew of the underlying wrongs committed—not that he should have known. *Wiand v. Wells Fargo Bank, NA*, 938 F. Supp. 2d 1238, 1244-46 (M.D. Fla. 2013). Red flags and suspicions do not create actual knowledge. *Platinum Estates, Inc. v. TD Bank, N.A.*, 2012 WL 760791, at *4-5 (S.D. Fla. Mar. 8, 2012) ("Plaintiff has failed to allege sufficiently the requisite degree of scienter, because red flags or aroused suspicions do not constitute actual awareness of one's role in a fraudulent scheme."); *Cordell Consultants, Inc.,* 2012 WL 13148744, at *5 ("Red flags, or aroused suspicions, do not constitute actual awareness."). Conclusory allegations that the defendant "knew" of the fraudulent activity or "formulaic recitation of a cause of action" do not establish actual knowledge. *Facebook, Inc.*, 274 F.R.D. at 285; *Tai-Si Kim v. Kearney*, 2010 WL 3433130, at *9 (D. Nev. Aug. 30, 2010). Thus, even in a case involving a Ponzi scheme, the provision of routine services, including the failure to investigate transactions, does not satisfy this "actual knowledge" standard. *Lawrence*, 455 F. App'x at 907. Reckless conduct does not suffice, either. *Wiand*, 838 F. Supp. 2d at 1247; *Sender*, 423 F. Supp. 2d at 1175-76. There must be a "conscious and specific motivation" to aid the fraud. *Court Appointed Receiver of Lancer Offshore v. Citgo Group, Ltd.*, 2008 WL 926513, at *6 (S.D. Fla. Mar. 31, 2008).

The Amended Complaint does not meet this standard. Nowhere do Plaintiffs explain how or when Wassgren came to know of Davison and Rybicki's plan to engage in a Ponzi scheme. Nor is there any specific allegation of when and why Wassgren agreed to defraud 1,100 people, over nearly a decade, or a plausible explanation for what he gained by doing so. Over and over, Plaintiffs simply *infer* that because Davison and Rybicki engaged in unlawful conduct, Wassgren must have known about it and must have assisted in their wrongdoing. There are no smoking gun

documents or plausible allegations of Wassgren's actual knowledge and "conscious and specific motivation" to aid in any fraudulent scheme. Without such allegations, this claim fails.

### C.   Plaintiffs' Aiding And Abetting Breach Of Fiduciary Duty Claims Fail

#### i.   Count II (Florida), Count V (California), Count XIII (Arizona), Count XVI (Colorado) And Count XX (Nevada) Fail

For the purposes of Fox's motion to dismiss, the pertinent elements for aiding and abetting breach of fiduciary duty are: (1) fiduciary duty on the part of the primary wrongdoer, (2) breach of the fiduciary duty, (3) actual knowledge of the breach by the aider and abettor, and (4) substantial assistance or encouragement of the wrongdoing by the aider and abettor. *Turnberry Vill. N. Tower Condo. Ass'n, Inc. v. Turnberry Vill. S. Tower Condo. Ass'n, Inc.*, 224 So. 3d 266, 267 (Fla. 3d DCA 2017).[10]

#### 1.   Plaintiffs Fail To Allege Wassgren's Actual Knowledge Or Substantial Assistance

Aiding and abetting breach of fiduciary duty claims require the same actual knowledge standard as aiding and abetting fraud claims. *Wiand*, 938 F. Supp. 2d at 1244. A plaintiff does not adequately plead actual knowledge based on "inference" or suspicion. *Stern v. Charles Schwab & Co.*, 2010 WL 1250732, at *8 (D. Ariz. Mar. 24, 2010). Aiding and abetting a breach of fiduciary duty "requires actual knowledge and is not satisfied by reckless or negligent conduct." *Sender v. Mann*, 423 F. Supp. 2d 1155, 1176 (D. Colo. 2006). The aider and abettor's "substantial assistance" must be a "substantial factor in causing the tort," or "proximately caused the violation." *Id.* at 1176. *See also Nevis v. Wells Fargo Bank*, 2010 WL 11636091, at *5-6

---

[10] *See also Chang v. Wells Fargo Bank, N.A.*, 2020 WL 1694360, at *7 (N.D. Cal. Apr. 7, 2020); *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 485 (Ariz. 2002); *Alvarez LLC v. Blazar Tech. Sols., LLC*, 2019 WL 3205952, at *1 (D. Colo. July 16, 2019); *Guilfoyle v. Olde Monmouth Stock Transfer Co.*, 335 P.3d 190, 198 (Nev. 2014). Again, for the purposes of addressing the most significant pleading deficiencies with respect to Plaintiffs' aiding and abetting breach of fiduciary duty claims, Fox will address the state common law claims together. But Fox does not concede that these claims are substantially similar in all relevant respects, particularly as it relates to the fiduciary duty allegedly owed.

(N.D. Cal. Jan. 13, 2010) (no actual knowledge when no specific allegations defendant knew third party was making objective misrepresentations).

As explained above, Plaintiffs have failed to allege substantial assistance or actual knowledge by Wassgren of any breach of fiduciary duty. Allegations that the defendant "should have known" of the primary wrongdoer's breach of fiduciary duty based on "red flags" does not satisfy Rules 12(b)(6) or 9(b). *Groom v. Bank of Am.*, 2012 WL 50250, at *3 (M.D. Fla. Jan. 9, 2012). "Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." *Groom v. TD Bank, N.A.*, 2012 WL 12906533, at *4 (M.D. Fla. Apr. 30, 2012). Plaintiffs have not plausibly alleged with the required particularity when, how and why Wassgren aided and abetted any alleged breach of fiduciary duty or that he did so with actual knowledge of any breach.

## 2.    Plaintiffs Fail To Allege A Breach Of Fiduciary Duty

Plaintiffs also fail to allege a breach of fiduciary duty. The fiduciary duty standard and factual issues and legal elements as to each state's law are distinct, as are Plaintiffs' allegations regarding what nonparty owed a fiduciary duty, whether sales agents, EquiAlt, or both.

The Amended Complaint uses inconsistent and shifting labels to characterize the nature of the sales agents and EquiAlt's relationship with the investors, which do not meet the pleading requirements of Rules 9(b) and 12(b)(6), or the distinct requirements of each state's law. In conclusory form, Plaintiffs allege they purchased the securities from "unlicensed sales agents" who had "existing clients with whom they had pre-existing confidential fiduciary relationships of trust and confidence." DE 13, ¶¶ 29, 32, 33. They also allege EquiAlt and the sales agents "gained the trust and confidence from the Plaintiffs" because they had "superior knowledge" of the securities, though superior knowledge usually occurs whenever a salesperson offers a product to a consumer. *Id.* ¶¶ 123-24. At various points the sales agents are characterized as acting as "de

facto investor advisors or brokers or financial advisors." *Id.* ¶ 119. But they are also allegedly "securities broker[s] and financial planner[s]" for the investors. *Id.* ¶ 307. Plaintiffs also allege the sales agents "were largely unlicensed insurance producers and financial advisors." *Id.* ¶ 34. And the sales agents "held themselves out as financial advisors." *Id.* ¶ 120. Regardless, the subscription agreements executed by the Plaintiffs-investors and incorporated by reference into the Amended Complaint specifically disavow a broker-like relationship. DE 13-4, at 19.[11] (providing that each investor "severally represents and warrants that it has not engaged, consented to or authorized any broker, finder or intermediary to act on its behalf, directly or indirectly, as a broker, finder or intermediary in connection with the transactions contemplated" by their agreements).

As to Florida, nowhere do Plaintiffs allege the existence of a fiduciary relationship between the investors and either the sales agents or EquiAlt. DE 13, ¶ 158. Florida law recognizes that a fiduciary duty may be either express or implied. *Arbitrajes Finacnieros, S.A. v. Bank of Am., N.A.*, 605 F. App'x 820, 823 (11th Cir. 2015). Plaintiffs do not allege an express fiduciary relationship. An implied fiduciary duty is "premised upon the specific factual situation surrounding the transaction and the relationship of the parties," and exists "where confidence is reposed by one party and a trust accepted by the other." *In re Palm Beach Fin. Partners*, 488 B.R. 758, 781 (Bankr. S.D. Fla. 2013). To plausibly allege a fiduciary relationship, Plaintiffs must allege "some dependency by one party and some undertaking by the other party to advise, counsel, and protect the weaker party." *Lanz v. Resolution Trust Corp.*, 764 F. Supp. 176, 179 (S.D. Fla. 1991). Plaintiffs allege no facts demonstrating the investors depended on the sales agents or EquiAlt or that the sales agents or EquiAlt undertook such efforts.

---

[11] As exhibits to the amended complaint, the subscription agreements are incorporated by reference and may be considered by the Court in assessing the plausibility of Plaintiffs' allegations. *See Financial Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007).

Under California law, Plaintiffs have also failed to allege a fiduciary duty between themselves and the sales agents. DE 13, ¶ 182. Under California law, a "mere facilitator" of an investment transaction does not have a fiduciary duty to customers. *Flores v. Gain Capital Grp., LLC*, 2018 WL 6133644, at *6 (C.D. Cal. June 20, 2018) (noting that when the relationship is "confined to the simple performance of transactions ordered by the customer," no fiduciary duty arises). Beyond the conclusory and inconsistent allegations above, Plaintiffs do not allege how the sales agents served as anything other than facilitators of their investment transactions.

Similarly, under Arizona law, a "ministerial relationship" involving "a few discreet transactions" does not create a fiduciary relationship. *Jakemer v. Romano*, 2007 WL 704178, at *4 (D. Ariz. March 5, 2007). There are no allegations evidencing a "peculiar reliance in the trustworthiness of another," as required to create a fiduciary duty. *Id.* at *4. All that is alleged is that the sales agents executed less than a handful of transactions over a discrete period of time.

Under Colorado law, "[a] fiduciary relationship exists when one person is under a duty to act for or to give advice for the benefit of another upon matters within the scope of their relationship." *Prymak v. Contemporary Fin. Sols., Inc.*, 2007 WL 4250020, at *12 (D. Colo. Nov. 29, 2007). Securities brokers do not have a "per se" fiduciary relationship with buyers of their securities. *Id.* To establish such a relationship, "proof of practical control of a customer's account by a broker . . . with regard to the broker's handling of the customer's account" is required. *Id.* "If the broker has acted as an investment advisor, and particularly if the customer has almost invariably followed the broker's advice, this is an indication that the broker exercises functional control of the account and that the broker-customer relationship is fiduciary." *Id.* There is no allegation in the Amended Complaint, beyond Plaintiffs' conclusory contention that

the sales agents "were largely unlicensed insurance producers and financial advisors," asserting as such. DE 13, ¶ 34. Plaintiffs also do not contend any sales agent had control of their accounts.

Finally, Plaintiffs allege in conclusory form that the sales agents, EquiAlt, the EquiAlt funds, and Davison and Rybicki owed them fiduciary duties because of the sales agents' assumption of the role of "securities broker and financial planner" for the investors. *Id.* ¶ 307. This claim fails first because Plaintiffs' conclusory contentions do not suffice under Rules 9(b) and 12(b)(6). Second, "Nevada did not recognize that an investment adviser owed his client a fiduciary duty until 2017." *Landow v. Bartlett*, 2019 WL 8064074, at *2 (D. Nev. Nov. 18, 2019) (citing Nev. Rev. Stat. § 90.575(1) (eff. July 1, 2017)). Wassgren left Fox in May 2017; thus, regardless of Plaintiffs' pleading deficiencies, their claims are barred.

### ii.     Count V (California) Also Fails Because Plaintiffs Do Not Allege Personal Gain

Plaintiffs' California aiding and abetting breach of fiduciary duty claim also fails because Plaintiffs do not allege Wassgren received any personal or financial gain in exchange for his alleged aiding and abetting breach of fiduciary duty. Under California law, "a plaintiff may sue a third party for aiding and abetting breach of fiduciary duty, but only if the third party was acting for personal gain or in furtherance of his or her own financial advantage." *Richardson v. Reliance Nat. Indem. Co.*, 2000 WL 284211, * 11 (N.D. Cal. Mar. 9, 2000). *See also Sanchez v. Aviva Life & Annuity Co.*, 2010 WL 2606670, at *7-8 (E.D. Cal. June 28, 2010).[12] "California courts have uniformly held that ordinary fees are insufficient to satisfy the 'personal gain or financial advantage' requirement." *Neilson v. Union Bank of Cal., N.A.*, 2003 WL 27374137, at *13 (C.D.

---

[12] Fox acknowledges there is uncertainty under California law as to whether a plaintiff must plead personal gain to survive a motion to dismiss. *See Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1129 (C.D. Cal. 2003) (finding personal gain is not element of aiding and abetting breach of fiduciary duty required to be pled at motion to dismiss stage).

Cal. Feb. 20, 2003) (collecting cases). Because Plaintiffs do not allege what benefit Wassgren received by allegedly aiding and abetting EquiAlt's breach, the claim fails as a matter of law.

### D.  Plaintiffs' Florida Civil Conspiracy Claim (Count III) Fails

The elements of civil conspiracy under Florida law are: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts performed pursuant to the conspiracy. *Whitney Nat'l Bank v. SDC Comms., Inc.*, 2010 WL 1270264, at *5 (M.D. Fla. April 1, 2010) (dismissing civil conspiracy claim). Because civil conspiracy is not an independent cause of action, Plaintiffs must allege an underlying illegal act or tort—in this case, fraud. *See Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997).

Plaintiffs' claim fails for three reasons. *First*, as explained above, Plaintiffs have failed to plausibly allege fraud; therefore, their claim for conspiracy to commit fraud fails as a matter of law. *See id. Second*, as outlined above, Plaintiffs have failed to allege with plausible, particularized facts that Wassgren agreed to engage in any conspiracy or did anything other than provide legal advice to his client.

*Third*, under Florida law's intra-corporate conspiracy doctrine, an attorney is not liable for allegedly conspiring with a client for actions taken on behalf of, and for the benefit of, the client. *Farese v. Scherer*, 342 F.3d 1223, 1231-32 (11th Cir. 2003); *Lipsig v. Ramlawi*, 760 So. 2d 170, 186 (Fla. 3d DCA 2000); *Am. Credit Card Tel. Co. v. Nat'l Pay Tel. Corp.*, 504 So. 2d 486, 488 (Fla. 1st DCA 1987). In *Lipsig*, the Third District held that even though the lawyer allegedly advised his clients on how to deprive a partner of his partnership interest, the lawyer was not liable for conspiracy because there was no allegation he had any personal stake in the outcome. 760 So. 2d at 181. A personal stake is something more than receipt of ordinary legal fees and must be separate and distinct from the corporation's interest; and the failure to plead

such an interest is fatal to the claim. *Mancinelli v. Davis*, 217 So. 3d 1034, 1036-37 (Fla. 4th

DCA 2017) (explaining that intra-corporate conspiracy doctrine is not an affirmative defense and

the plaintiff was required to plead defendant's personal stake); *Whitney Nat'l Bank*, 2010 WL

1270264, at *5 (dismissing complaint on intra-corporate conspiracy doctrine). With no allegation

that Wassgren had a personal stake in the outcome, the claim fails as a matter of law.

## II.    Plaintiffs' Blue Sky Laws Claims Fail (Counts IV, IX-XI, XIV, XV & XIX)

As a threshold matter, except for Plaintiff Greenberg, Plaintiffs fail to allege

jurisdictional facts necessary to state a claim for a violation of the blue sky laws. In order for any

of the state securities laws to apply [DE 13, ¶¶ 170-80, 208-35, 256-74 & 294-304], the

transaction must occur within the state.[13] The Amended Complaint does not allege that any of the

offers or sales of EquiAlt debentures *to Plaintiffs* occurred in California, Arizona, Colorado or

Nevada.[14] DE 13 at ¶¶ 13, 140, 256–74. All Plaintiffs allege is that they are residents of or

domiciled in those states, *see id.* ¶¶ 7–16, 134–143, and non-specific allegations that EquiAlt or

"the Non-Defendant Promoters" generally offered or sold securities in those states. *Id.* ¶¶ 172,

178, 222, 231, 269 & 300. These allegations do not support more than a "mere possibility" that

the offers or sales that pertain to any of Plaintiffs' alleged investments in EquiAlt occurred in

---

[13] Cal. Corp. Code § 25401 ("It is unlawful for any person to offer or sell a security *in this state*, or to buy or offer to buy a security *in this state*"; Cal. Corp. Code § 25110 ("It is unlawful for any person to offer or sell *in this state*"; Cal. Corp. Code § 25210(b) ("No person shall . . . effect any transaction in, or induce or attempt to induce the purchase or sale of, any security *in this state*"); Ariz. Rev. Stat. Ann. § 44-1841 ("It is a fraudulent practice and unlawful for a person, in connection with a transaction or transactions *within or from this state* involving an offer to sell or buy securities"); Ariz. Rev. Stat. Ann § 44-1842 ("It is unlawful for any dealer to sell or purchase or offer to sell . . . any securities within or from this state); Ariz. Rev. Stat. Ann. § 44-1991 ("It is unlawful for any person to transact business *in this State*"); Colo. Rev. Stat. Ann. § 11-51-102(1) (provisions of CSA apply when an "offer to sell *is made in* [Colorado]" or when "an offer to purchase *is made and accepted in* [Colorado]"); *Simms Inv. Co. v. E.F. Hutton & Co. Inc.*, 699 F. Supp. 543, 546 (M.D.N.C. 1988) (observing that for Colorado Securities Act to apply, "the transaction must take place within the state"); Nev. Rev. Stat. Ann. § 90.310 ("It is unlawful for a person to offer to sell or sell any security *in this State*); Nev. Rev. Stat. Ann. § 90.460 ("It is unlawful for a person to offer to sell or sell any security *in this State*").

[14] Plaintiffs allege Greenberg "sold a $50,000 investment in Fund 1 *at his home in Santa Clara County, California*." DE 13, ¶ 139. Plaintiffs do not make a similar allegation for any other plaintiff.  *See id.* ¶¶ 133-43.

these states. *See Iqbal*, 556 U.S. at 679. Nor do the investment contracts attached to the Amended Complaint state where the offers were made or accepted.[15] Thus, these claims fail.

### A.    Plaintiffs' Claims Fail Under The California Securities Law (Count IV)

### i.    Plaintiffs' Section 25210(b) Claim Fails

Section 25210 broadly prohibits "broker-dealers" (and their agents) from effecting the purchase or sale of securities in California unless authorized to do so. *See* Cal. Corp. Code § 25210(a)-(b). Plaintiffs allege Fox breached § 25210(b) by "encouraging" unlicensed broker-dealers and agents (none of whom are named as parties) to sell unqualified securities.  DE 13, ¶ 175. Plaintiffs suggest this "encouragement" renders Fox secondarily liable under § 25501.5. DE 13, ¶ 176.  Plaintiffs are incorrect.

In California, civil liability for securities violations is restricted to the causes of action expressly set out in California's Corporations Code. *See* Cal. Corp. Code § 25510. Section 25504.1 is the code section that authorizes secondary liability for violations of several forms of securities violations. *See id.* at § 25504.1. Section 25504.1 does not even mention the provision relied upon by Plaintiffs.  Further, § 25501.5 does not include a secondary liability component. *Id.* at § 25501.5(a)(1).  Accordingly, Plaintiffs are not permitted to sue Fox under this section, and their claim must be dismissed.

### ii.    Plaintiffs' Section 25110 Claim Fails

Section 25110 requires state registration of securities unless exempted. *Id.* at § 25110. Section 25503 provides a private right of action for violations of § 25110. *Id.* at § 25503. Section 25504.1, in turn, provides joint and several liability for "[a]ny person who materially assists in any violation of Section 25110 . . . with intent to deceive or defraud." *Id.* at § 25504.1.

---

[15] *See* DE 13-3, Ex. Q (Gleinns); DE 13-3, Ex. R (Toone); DE 13-4, Ex. S (Cellis); DE 13-4, Ex. T (Meier); DE 13-5, Ex. U (Murphy); DE 13-5, Ex. V (Rubinsteins); DE 13-5, Ex. X (Hannens); DE 13-6, Ex. Z (Rory and Marcia O'Neal); DE 13-8, Ex. AA (Sean O'Neal); DE 13-10, Ex. BB (Cobleigh).

Plaintiffs are incorrect that a violation may be established without proof of "intent to deceive or defraud." DE 13, ¶ 173. This contradicts the plain language of § 25504.1, as well as the conclusions of numerous California courts. *See, e.g.*, *Moss v. Kroner*, 197 Cal. App. 4th 860, 872 (2011) (noting Section 25504.1 requires the intent to deceive or defraud); *Lubin v. Sybedon Corp.*, 688 F. Supp. 1425, 1453 (S.D. Cal. 1988).

For the same reasons that Plaintiffs fail to state a common law aiding-and-abetting claim, Plaintiffs also fail to state a claim for "materially assisting" a violation of § 25110 "with the intent to deceive or defraud." *See supra* Section I(B-C); *AREI II Cases*, 216 Cal. App. 4th 1004, 1013 (Cal. 2013) ("Section 25504.1 imposes what is sometimes referred to as aider and abettor liability"). Plaintiffs have not plausibly alleged facts to show that Fox "substantially assisted" in the offer or sale of unregistered securities in unqualified securities in California. *See supra* Section I(B-C); *AREI II Cases*, 216 Cal. App. 4th at 1015-16; *Calderon v. Total Wealth Mgmt., Inc.*, 2017 WL 6272096, at *7 (S.D. Cal. Jan. 19, 2017).

Plaintiffs also have not plausibly alleged that any assistance Fox may have given to EquiAlt was with the "intent to deceive or defraud." *See supra* Section I (B-C); *AREI II Cases*, 216 Cal. App. 4th at 1015-16 ("intent to defraud" requires more than that the alleged aider and abettor "knew or had reason to know of the facts constituting the violation"); *see generally Alpinieri v. TGG Mgmt. Co., Inc.*, 2014 WL 1761327, at *10 (Cal. Ct. App. May 5, 2014). Plaintiffs want this Court to accept that Fox's alleged knowledge of EquiAlt's non-compliance is sufficient. DE 13, ¶ 173. However, Plaintiffs' assertion is devoid of factual support. And, even if Plaintiffs were able to prove such knowledge, it would establish only that Fox "knew or had reason to know of the facts constituting the violation," which *still* would be insufficient to establish intent under § 25504.1. *See AREI II Cases*, 216 Cal. App. 4th at 1015-16.

### iii.   Plaintiffs' Section 25401 Claim Fails

Section 25401 states that it is unlawful "to offer or sell a security in this state . . . by means of any written or oral communication that includes an untrue statement of a material fact or omits to state a material fact necessary to make the statements made, in light of the circumstances under which the statements were made, not misleading."  § 25401. Section 25501 establishes a private cause of action for violations of § 25401. § 25501. Section 25504.1, in turn, provides for joint and several liability for "[a]ny person who materially assists in any violation of Section . . . 25401 . . . with intent to deceive or defraud." § 25504.1

For the same reasons Plaintiffs fail to plausibly state a common law aiding-and-abetting claim or a claim for aiding and abetting a violation of § 25110, Plaintiffs also fail to state a claim for "materially assisting" a violation of § 25401 "with the intent to deceive or defraud." *See supra* Section I(B-C) & Section II(A)(ii).

### B.   Plaintiffs' Claims Fail Under the Arizona Securities Act (Counts IX, X & XI)

Plaintiffs allege that Arizona "extends civil liability beyond the immediate parties to the sale, to all persons 'who made, participated in or induced the unlawful sale or purchase.'" DE 13, ¶¶ 212, 221, 229. The vehicle, § 44–2003(A). *Id.* Courts, however, only extend liability under § 44-2003(A) "to persons who have 'more than some collateral involvement in a securities transaction' and to misstatements that have more than 'merely . . . the effect of influencing a buyer to make a sale.'" *In re Allstate Life Ins. Co. Litig.*, 971 F. Supp. 2d 930, 941 (D. Ariz. 2013). Section 44-2003(A) further exempts this form of liability for persons that "acted in the *ordinary course of that person's professional capacity.*" ARS § 44-2003(A).

Here, Plaintiffs allege no facts that Fox "participated in or induced" an unlawful sale or purchase of securities under section 44–2003(A). Rather, the allegations relate to the preparation of offering documents or imply that Fox knew about the unlawful conduct without alleging any

real facts in support. DE 13, ¶¶ 213, 222, 231. This alleged conduct is plainly collateral to the transactions and does not constitute participation in or inducement to enter a transaction. *See Allstate*, 971 F. Supp. 2d at 941.

Further, even if Fox engaged in this conduct, there is no allegation it did so other than in "the ordinary course of [its] professional capacity," which exempts it from liability under §44–2003(A). § 44-2003(A). Plaintiffs' argument improperly seeks to circumvent the bright-line rule that aid-and-abet liability does not exist for alleged violations of the ASA. *See Sell v. Gama*, 231 Ariz. 323, 329 (2013) ("inappropriate to anchor a finding of aiding and abetting liability under the ASA on common law tort principles").

### C. Plaintiffs' Claims Fail Under The Colorado Securities Act (Count XIV & XV)

*First*, Count XV (aiding and abetting a violation of C.R.S. § 11-51-301, which prohibits the offer or sale of unregistered securities) fails to state a claim because the Colorado Securities Act ("CSA") does not provide for aiding and abetting liability for that type of violation. CRS § 11-51-604(1) (establishes a private cause of action against "[a]ny person who sells a security in violation of section 11-51-301"). There is no aiding-and-abetting liability language in the statute nor any decision holding that such liability exists.  Again, courts do not graft aiding-and-abetting liability onto statutory causes of action that do not expressly provide for it. *See, e.g.*, *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177 (1994); *Aaron v. Trump Org., Inc.*, 2011 WL 2784151, at *5 (M.D. Fla. July 15, 2011).

Subsection (5)(c) of the same Colorado statute, CRS § 11-51-604(5)(c), confirms that the Colorado legislature did *not* intend for aiding-and-abetting liability to attach to violations of § 11-51-301. § 11-51-604(5)(c). This statute provides for aiding and abetting liability, but only for violations of C.R.S. § 11-51-501, not *§ 11-51-301*. *Id.* That legislative choice indicates that the

Colorado legislature knew how to impose aiding-and-abetting liability, and elected not to impose it for violations of § 11-51-301. *See, e.g.*, *Beeghly v. Mack*, 20 P.3d 610, 613 (Colo. 2001).[16]

*Second*, Plaintiffs failed to adequately allege the elements of aiding and abetting a violation of C.R.S. § 11-51-501 (Count XIV), which prohibits (among other things) fraud in the offer or sale of securities. *See* CRS § 11-51-501(1); DE 13, ¶¶ 258–60. The elements of aiding and abetting an alleged violation of § 11-51-501 are the same as the elements of aiding and abetting tort claims, addressed above. *See* CRS § 11-51-604(5)(c). As with the tort claims, Plaintiffs fail to credibly allege Fox knew EquiAlt was engaged in securities fraud or that Fox gave substantial assistance to that alleged fraud. Consequently, this claim fails as well. *Id.*

### D.    Plaintiffs' Claims Fail Under The Nevada Securities Act (Count XIX)

Plaintiffs allege that "Non-Defendant Promoters" sold securities in violation of several Nevada securities laws. DE 13, ¶ 300. Plaintiffs then aver that Fox, as the purported "agent" of the Non-Defendant Promoters, is secondarily liable for the alleged violations. *Id.* at ¶ 302. As factual support for its "agency" theory, Plaintiffs allege that Fox "stepped outside their normal role as attorneys" by drafting investment materials, receiving investor questionnaires, drafting consulting agreements, and so on. *See id.* However, Plaintiffs do not allege that Fox actively assisted in offering securities for sale, solicited offers to buy the securities, or otherwise directly interacted with the buyers of the securities. This failure is fatal to their claims.

Plaintiffs are correct that NRS § 90.660(4) imposes joint and several liability upon "any agent of the person" liable for violating specific securities laws. NRS § 90.660(4). "Agent," however, does not mean that any lawyer (or law firm) providing legal services on behalf of a client is *de facto* liable for the client's alleged securities violations. Indeed, several courts

---

[16] Even if such liability existed for violations of § 11-51-301, Plaintiffs failed to plead the knowledge and substantial assistance required to state such a claim.  *See supra* Section I(B-C).

considering the issue all conclude that an attorney is not an "agent" under securities laws unless the lawyer actively facilitates the sale of securities. *See, e.g.*, *Ward v. Bullis*, 748 N.W. 2d 397, 405 (N.D. 2008) ("To be liable as an agent, the attorney must do more than act as legal counsel, the attorney must actively assist in offering securities for sale, solicit offers to buy . . .").[17]

While Nevada courts have not defined "agent" as used in § 90.660(4), they nonetheless distinguish between actions in which the attorney acts solely as an agent for the client and those in which the attorney is merely providing legal services. *See Dezzani v. Kern & Assocs., Ltd.*, 412 P.3d 56, 62 (Nev. 2018) ("Whether an attorney is liable under an agency theory hinges on whether the attorney is acting solely as an agent for the client, *i.e.*, as a debt collector, or whether the attorney is providing legal services to a client").

Finally, a plaintiff must plead loss causation[18] to prove a claim for securities fraud under Nevada law. § 90.570. While Nevada courts have not specifically reached this holding, several courts have noted that Nevada's securities fraud laws are interpreted in a manner consistent with federal Rule 10b-5. *See Shivers v. Amerco*, 670 F.2d 826, 831 (1982).[19] Because a claim under Rule 10b requires a plaintiff to plead loss causation, so does a claim arising under § 90.570.

Here, because Plaintiffs have not alleged that Fox did anything other than draft documents which the "Non-Defendant Promoters" used to sell securities, *see* DE 13 at ¶ 302,

---

[17] *See Rendler v. Markos*, 453 N.W. 2d 202, 206 (Wis. Ct. App. 1990) ("The definition of 'agent' in [Wisconsin's security law] does not include attorneys who merely render legal advice or draft documents for use in securities transactions. The definition covers persons who assist directly in offering securities for sale, soliciting offers to buy, or performing the sale, but who do not fit the definition of broker-dealer. It is not intended to cover professionals such as attorneys engaging in their traditional advisory functions."); *see also Schatz v. Rosenberg*, 943 F.2d 485, 497 (4th Cir. 1991) ("[W]hen a lawyer offers no legal opinions or affirmative misrepresentations to the potential investors and merely acts a scrivener for the investment group, the lawyer cannot be liable as a matter of law for aider and abettor liability under the securities laws without an allegation of a conscious intent to violate the securities laws.").

[18] The loss causation requirement, equivalent to proximate causation in tort, is satisfied if the plaintiff shows that "the misrepresentation touches upon the reasons for the investment's decline in value." *Binder v. Gillespie*, 184 F.3d 1059, 1065-66 (9th Cir. 1999).

[19] *See also Prime Mover Capital Partners L.P. v. Elixir Gaming Techs., Inc.*, 898 F. Supp. 2d 673, 691 (S.D.N.Y. 2012) ("Plaintiffs' failure to adequately allege a Rule 10b–claim is dispositive of the claim under Section 90.570, and that claim is dismissed.") (addressing Nevada law).

Plaintiffs have not stated a claim for secondary liability under § 90.660(4). Further, the Amended Complaint is devoid of an allegation that the alleged fraudulent conduct attributed to Fox, through Wassgren, proximately caused any Nevada plaintiff to purchase EquiAlt securities. Rather, representations of the *sales agents*, not Fox, caused the Nevada plaintiffs to purchase the securities. And, there is no conduct alleged against Fox that resulted in EquiAlt's principals stealing investor money or causing reduction in value. Consequently, this claim fails.

## III.   Plaintiffs' Fail To Plead Scienter (In Part, Counts IV, XI, XIV & XIX)

Under California (§ 25504.1), Arizona (§ 44-1991(A)(1)), Colorado (§ 11-51-501(a) and (c)), and Nevada (§ 90.570) law, Plaintiffs assert secondary liability against Fox arising out of EquiAlt's alleged securities fraud. DE 13, ¶¶ 178, 230, 259 & 302. Each of these claims, however, requires Plaintiffs to plead and prove scienter.[20] Here, Plaintiffs' allegations fail to adequately allege scienter.  As articulated in greater detail above, the Amended Complaint is devoid of well-pled facts that Fox, in providing legal services, intended to deceive or default prospective EquiAlt investors. There is simply nothing for the Court to "grab onto" to deduce the element of intent required to state these claims.

## IV.   All Named Plaintiffs' Claims Fail As To Fox (All Counts)

### A.   Fox Is Not Liable For Any Damages[21] Arising *After* Wassgren Left Fox

Plaintiffs' lawsuit against Fox is based on numerous theories of secondary liability. These claims require the Named Plaintiffs to establish an injury fairly traceable to Fox's conduct. *See*

---

[20] *In re Diasonics Sec. Litig.*, 599 F. Supp. 447, 459 & n.13 (N.D. Cal. 1984); *Allstate Life Ins. Co. v. Robert W. Baird & Co., Inc.*, 756 F. Supp. 2d 1113, 1159 (D. Ariz. 2010); *F.D.I.C. v. Countrywide Fin. Corp.*, 2013 WL 49727, at *3 (C.D. Cal. Jan. 3, 2013) (applying Colorado law); *AZR, LLC v. Veritest Int'l Corp.*, 2010 WL 11454412, at *4 (D. Ariz. Aug. 24, 2010) (interpreting Nevada securities fraud claims consistent with securities fraud claims under federal law); *Anahuac Mgmt. v. Mazer*, 2013 WL 211080, at *6 (D. Nev. Jan. 18, 2013) (a claim under Rule 10b(5) requires the plaintiff to plead and prove scienter).

[21] Plaintiffs only claim two forms of monetary damages: compensatory damages and punitive damages.  For compensatory damages, Plaintiffs only seek to recover the principal they invested in EquiAlt securities. DE 13, ¶ 147(x) & Prayer.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

In addition, counts I, II, V, VI, XII-XX and XXIII, as well as components of counts IV, VII and VIII all require proof of an underlying tort or primary violation of a state securities or consumer protection statute.[22] All of the common law aiding and abetting claims, for example, require proof of commission of an underlying tort by the primary tortfeasor, *actual knowledge* of the violation by the aider and abettor, *and* "substantial assistance" by the aider and abettor in proximately causing the damage to the plaintiff. *Id.* The Florida civil conspiracy claim requires "damage to the plaintiff as a result of the acts done under the conspiracy." *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997).

Thus, for Plaintiffs' claims arising out of the purchase of allegedly fraudulent securities, regardless of how or why the securities were purchased, Fox cannot be liable for the purchases that occurred *after* Wassgren left Fox. This means that Fox cannot be liable, as a matter of law, for damages arising out of the EquiAlt investments of Toone, the Cellis, Meier, Murphy, the Rubinsteins, Greenberg, R. O'Neal, M. O'Neal and Cobleigh. This same bar also applies to the investments of the Gleinns, the Hannens and S. O'Neal, which occurred *after* Wassgren left Fox.

## B.    Fox Is Not Liable For Damages Of Investors Whose Principal Was Returned

The Gleinns and the Hannens have not suffered any damages as a result of the investments they made in EquiAlt securities while Wassgren was employed by Fox. This is because, as Plaintiffs allege, the Gleinns and the Hannens recouped all of the principal they invested related to their 2016 investments. DE 13, ¶¶ 133 &140. Their remaining investments, and any losses, occurred *after* Wassgren left Fox and should thus be dismissed as argued above.

---

[22] *Wiand v. Wells Fargo Bank, NA*, 938 F. Supp. 2d 1238, 1244 (M.D. Fla. 2013); *Facebook, Inc. v. MaxBounty, Inc.*, 274 F.R.D. 279, 285 (N.D. Cal. 2011); *Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 23 (Ariz. 2002) (en banc); *Nelson v. Elway*, 971 P.3d 245, 249-50 (Colo. Ct. App. 1998); *G.K. Las Vegas Ltd. P'ship. v. Simon Prop. Group, Inc.*, 460 F. Supp. 2d 1246, 1261 (D. Nev. 2006); Cal. Corp. Code § 25504.1; *see* Cal. Welf. & Ins. Code § 15610(30)(2); Cal. Bus. & Prof. Code § 17200, et seq.; A.R.S. § 44–2003(A); *see* C.R.S.A. § 11-51-604; N.R.S. 90.660; *see* N.R.S. 41.600.

As for the Gleinns, the Amended Complaint states that they initially invested $50,000 in 2016, "which matured in 2019." *Id.*, ¶ 133. After Wassgren left Fox, the Gleinns reinvested in 2019. *Id.* Construing the allegations as true, and giving them a fair reading, EquiAlt returned the $50,000 to the Gleinns.[23] As part of a *new* transaction, the Gleinns decided to invest $150,000 in EquiAlt Fund II. DE 13, ¶ 133. Notably, with regard to the 2016 transaction, the Gleinns fail to attach the 2016 debenture as an exhibit. Thus, the only compensatory damages fairly claimed by the Gleinns arise from an investment made after Wassgren left Fox and thus must be dismissed.

As for the Hannens, the Amended Complaint states that they initially invested $200,000 in 2016, but "at the end of the 36-month term," which occurred in 2019, after Wassgren left Fox, the Hannens "renewed" their EquiAlt investment in the same amount as their initial investment, i.e. $200,000. DE 13, ¶ 140. EquiAlt returned, or made available for return, the initial $200,000 to the Hannens. *Id.* As part of a new transaction, the Hannens decided to re-invest $200,000 in EquiAlt Fund II. *Id.* Like the Gleinns, the Hannens fail to attach any 2016 EquiAlt debenture to the Amended Complaint. Because the Hannens claim no compensatory damages arising out of Wassgren's conduct at Fox, the Hannens' claims must also be dismissed.[24]

### C.   Fox Is Not Liable For Damages Caused By A Superseding Cause

S. O'Neal cannot state a claim against Fox for the sole investment he made in EquiAlt securities during Wassgren's employment by Fox because a superseding cause, pled by Plaintiffs, breaks the chain of causation.  Plaintiffs allege S. O'Neal invested $1 million in Fund 1 in late December 2016. DE 13, ¶ 142. However, Plaintiffs also allege S. O'Neal agreed to transfer his initial $1 million investment from Fund 1 into Fund 4 for new and different

---

[23] Plaintiffs attached the Declaration of Mark Dee, an SEC accountant as Exhibit C. Exhibit 6 to Dee's declaration shows that EquiAlt paid $17.8 million in redemptions to investors.

[24] As further evidence that Plaintiffs are not claiming damages from the Hannens' 2016 investment in EquiAlt, Plaintiffs fail to tender, as part of their claims under the Colorado Securities Act, any 2016 EquiAlt debenture. DE 13, ¶¶ 264 & 274.

consideration, including "a floor rate of 7% annually." *Id.* This decision occurred *after* Wassgren

left Fox, for a reason unrelated to Fox, and thus Fox cannot be liable for these alleged losses.[25]

## V.  Statutes Of Repose Bar Or Significantly Reduce Plaintiffs' Blue Sky Law Claims

Plaintiffs did not sue Fox until July 21, 2020. Because many of Plaintiffs' claims are

subject to statutes of repose, and as such are not tolled, they are barred, in whole or in part.

### A.  California (Count IV)

Plaintiffs alleged multiple violations of the California Securities Law of 1968 ("CSL").

*First*, Plaintiffs claim that Fox violated § 25401 and § 25501 by assisting EquiAlt in the

sale of securities by means of an untrue statement of material fact or omission of material fact.

DE 13, ¶¶ 177-78. Plaintiffs seek to extend the private cause of action created by § 25501 to Fox

via § 25504.1. *Id.* at ¶ 177. Section 25501, however, is governed by a five-year statute of repose.

§ 25506(b) ("no action shall be maintained to enforce any liability created under Section . . .

25501 . . . unless brought before the expiration of five years after the act or transaction

constituting the violation"). Analogizing to the Securities Act of 1933, the Ninth Circuit

construed § 25506 as an absolute bar on claims falling outside the repose period. *SEC v.

Seaboard Corp.*, 677 F. 2d 1301, 1308 (9th Cir. 1982); *Clayton v. Landsing Pac. Fund, Inc.*,

2002 WL 1058247, at *3 (N.D. Cal. May 9, 2002).[26] As an absolute bar, the repose period

"cannot be equitably tolled because of a defendant's fraudulent concealment of a cause of

action." *Clayton*, 2002 WL 1058247, at *2 (finding 10b-claim not subject to equitable tolling and

adopting this finding in construing § 25506 as an absolute bar). *Here*, the claims of any

investors, who invested in EquiAlt securities more than five years before July 21, 2020, fail.

*Second*, Plaintiffs claim that Fox violated § 25110 and § 25503 by materially assisting

---

[25] Plaintiffs further fail to tender, as part of their claims under the Nevada Securities Act, any 2016 EquiAlt debenture. DE 13, ¶ 304. Plaintiffs only tender the securities related to Fund 4.

[26] These decisions refer § 25506's "four-year period" because the statute applies a four-year limitation to claims accruing before 2005.

EquiAlt in the sale of non-exempt, unregistered securities. DE 13, ¶¶ 171-73. Plaintiffs seek to extend the private cause of action created by § 25501 to Fox via § 25504.1. *Id.* ¶ 171. Section 25503, however, is governed by a two-year statute of repose.  § 25507(a) ("[n]o action shall be maintained to enforce any liability created under Section 25503 . . . unless brought before the expiration of two years after the violation upon which it is based"). Save a shorter limitations period, § 25507's language is identical with § 25506. *Id.*; *see* § 22506(b). As a result, § 25507's limitations period should be construed as an absolute bar and not subject to equitable tolling or fraudulent concealment. *See Seaboard*, 677 F.2d at 1308; *see Bowden v. Robinson*, 136 Cal. Rptr. 871, 876 (Ct. App. 1977). *Here*, the claims of any investors, who invested in EquiAlt securities more than two years before July 21, 2020, fail.

*Third*, Plaintiffs claim that Fox violated § 25210(b) and § 25501.5[27] by "encouraging" the sales agents to sell EquiAlt securities even though the securities were not qualified under the CSL and the sales agents were not licensed under the CSL. DE 13, ¶¶ 174-76. At its core, this claim concerns the qualification of the securities being offered or sold. And, while there is some reluctance on the part of California courts to select a definite repose period, the better reasoned authority, and the authority that speaks to the defect to be prohibited by the statute, provides for a two-year statute of repose.[28] *See Bowden*, 136 Cal. Rptr. at 876 ("[Section 25507's two-year] limitation is imposed to prevent purchasers from employing the remedies for violation of the qualification provisions to shift the risk of a bad investment to the seller"). *Here*, the claims of any investors, who invested in EquiAlt securities more than two years before July 21, 2020, fail.

---

[27] The claim is not extended to secondary actors by statute and is subject to complete dismissal as argued in Section III(D)(i) below.

[28] In the alternative, and if the Court rejects the above analysis, claims brought under § 25501.5, as a sub-statute of § 25501, should be subject to the same limitation period as § 25501; a repose period of 5 years.  Under this analysis, the claim any and all investors, who invested in EquiAlt securities more than five years before July 21, 2020, should be dismissed.

### B.    Arizona (Counts IX & X)[29]

Plaintiffs claim that Fox violated § 44-1841 and § 44-2001(A) by participating in the sale of non-exempt, unregistered securities. DE 13, ¶¶ 201-11. Plaintiffs further claim that Fox violated  § 44-1842 and § 44-2001(A) by participating in the sale of securities by an unregistered dealer. *Id.* ¶¶ 219-20. For both claims, Plaintiffs seek to extend the private cause of action created by § 44-2001(A) to Fox via § 44-2003(A). *Id.* ¶ 212. Sections 44-1841 and 44-1842, however, are governed by a one-year statute of repose,[30] which is not subject to the discovery rule. § 44–2004(A) ("[n]o civil action shall be maintained under this article to enforce any liability based on a violation of § 44-1841 or 44-1842 unless brought within one year after the violation occurs"); *see Zowine v. Prussin*, 2016 WL 558550, at *4 (D. Ariz. Feb. 12, 2016) (distinguishing between securities fraud claims and registration claims for purposes of application of the discovery rule). *Here*, the claims of any investors, who invested in EquiAlt securities more than one-year before July 21, 2020, fail.

### C.    Colorado (Counts XIV & XV)

*First*, Plaintiffs claim that Fox violated § 11-51-301 by aiding and abetting EquiAlt's sale of unregistered securities. DE 13, ¶¶ 269-70. Plaintiffs seek to extend the private cause of action created by § 11-51-604(1) to Fox. Section 11-51-604(1), however, is subject to a two-year statute of repose and is not subject to equitable tolling. § 11-51-604(8) ("[n]o person may sue under

---

[29] By Plaintiffs' own allegations, *see* DE ¶¶ 99-102, any Arizona or other investor who was contacted by the Arizona Securities Division in or around 2013, or who contemporaneously knew about it, was on notice of the alleged securities violations, triggering the need to investigate. Thus, *all* claims of those investors are time barred.

[30] Plaintiffs may respond that a single Arizona case, *London v. Green Acres Tr.*, 765 P.2d 538, 546 (Ariz. Ct. App. 1988), stands for the proposition that § 44-2004(A) is not a true repose period and may be tolled via fraudulent concealment. This case is an outlier. First, a plain reading of the statute confirms the time period in question is one of repose, not limitations. *See Albano v. Shea Homes Ltd. P'ship*, 254 P.3d 360, 366 (Ariz. 2011) (discussing differences between statutes of repose and statutes of limitation). Second, no other Arizona state of federal court has followed or adopted *London's* interpretation of § 44-2004(A) as applied to § 44-1841 and § 44-1842. Finally, a 2017 Arizona federal court decision, analyzing a related provision under the ASA, refused to equitably toll a repose period. *See Sierp v. DeGreen Partners LP*, 2017 WL 67531, at *11 (D. Ariz. Jan. 6, 2017).

subsection (1) . . . of this section more than two years after the contract of sale, or, as those provisions pertain to investment advisers, federal covered advisers, investment adviser representatives, and persons who provide investment advisory services, more than two years after the date of the violation"); *Grubka v. WebAccess Int'l, Inc.*, 445 F. Supp. 2d 1259, 1270 (D. Colo. 2006) (confirming that the time period in § 11-51-604 for registration violations is a statute of repose); *see Churchill Med. Sys., Inc. v. Rubacha*, 2019 WL 5894132, at *3 (D. Colo. Nov. 12, 2019) (predicting that Colorado Supreme Court would refuse to subject a similar statute of repose to equitable tolling). *Here*, the claims of any investors, who invested in EquiAlt securities more than two-years before July 21, 2020, fail.

*Second*, Plaintiffs claim that Fox violated § 11-51-501 by aiding and abetting EquiAlt's fraud in the sale of securities. DE 13, ¶¶ 258-61. Plaintiffs seek to extend the private cause of action created by § 11-51-604(3) & (4) to Fox via § 11-51-604(5)(c). *Id.* ¶ 258. Section 11-51-604(3) & (4), however, is subject to a five-year statute of repose and thus is not subject to equitable tolling. § 11-51-604(8) ("[n]o person may sue under subsection (3) or (4) . . . of this section . . . more than five years after the purchase or sale"). As with many of the other state securities fraud claims asserted by Plaintiffs, the repose period for this claim is modeled after the repose period for a securities fraud claim under the federal securities laws and thus is not subject to equitable tolling. *See People v. Pahl*, 169 P.3d 169, 185 (Colo. App. 2006) ("Colorado's securities statutes are modeled after federal securities laws"); *see Black Diamond Fund, LLLP v. Joseph*, 211 P.3d 727, 735 (Colo. App. 2009) (finding § 11-51-501(a) to be analogous to §10(b) of the Securities Exchange Act of 1934); *see also Olcott v. Delaware Flood Co.*, 76 F.3d 1538, 1549 n.11 (10th Cir. 1996). *Here*, the claims of any investors, who invested in EquiAlt securities more than five years before July 21, 2020, fail.

###### D.        Nevada (Count XIX)

Plaintiffs allege three (3) claims under the Nevada Securities Act ("NSA"), an unlicensed broker/dealer claim (§ 90.301), a failure to register claim (§ 90.460), and a fraud claim (§ 90.570), seeking to recover damages for all Nevada residents who invested in EquiAlt or who purchased EquiAlt securities from a sales agent operating out of Nevada. DE 13, ¶¶ 296-302. Plaintiffs seek to extend § 90.660(1)'s private cause of action to Fox under § 90.660(4), on the grounds that Fox was EquiAlt's "agent." *Id.*  This effort fails.

Section 90.670 provides for a five-year statute of repose for claims arising under 90.660. § 90.670 ("[a] person may not sue under NRS 90.660 unless suit is brought within . . . 5 years after the act, omission or transaction constituting the violation"). As with the federal securities laws, there is not equitable tolling for the statute of repose. *Tsambis v. Irvine*, 2018 WL 3186940, at *5 (D. Nev. June 28, 2018) (noting five-year statute of repose for actions under NRS § 90.660 and holding "[a] statute of repose bars a cause of action . . . regardless of when the cause of action was discovered or a recoverable injury occurred"); *Bourdel v. Wells Fargo Advisors, LLC*, 2013 WL 1855745, at *3 (D. Nev. Apr. 30, 2013). *Here*, the claims of investors who invested in EquiAlt securities more than five years before July 21, 2020, fail.

## VI.   Plaintiffs' Claims Under California's Unfair Competition Law Fail (Count VIII)

For the reasons stated in the motion to dismiss filed by DLA and Wassgren, adopted by Fox, the claims and against Fox under California's Unfair Competition Law ("UCL") fail to state a claim. *First*, Plaintiffs cannot state an "unlawful" prong claim, which requires a violation of a separate law to be actionable, because all of Plaintiffs' claim fail. *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).

*Second*, Plaintiffs cannot state an "unfair" prong claim because Plaintiffs fail to identify what conduct of Fox was supposedly "unfair." Plaintiffs, instead, recite the elements of a

criticized version of the test,[31] without explaining why Fox's provision of legal services to its client was "unfair." This is insufficient under *Iqbal* and thus fails. *Third*, Plaintiffs do not allege that Fox's conduct constituted an independent violation of the UCL's "fraud" prong. *See* DE 13, ¶¶ 203–07. But even if they had, the UCL does not provide for aiding and abetting fraud liability "outside of either a tort context or where an underlying statute allows such liability." *Toy v. TriWire Eng'g Sols., Inc.*, 2010 WL 3448535, at *3 (N.D. Cal. Sept. 1, 2010).

*Finally*, Plaintiffs' claim fails because they do not plausibly allege they have "lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204; *see Hall v. Time Inc.*, 158 Cal. App. 4th 847, 849 (2008), *as modified* (Jan. 28, 2008). Rather, Plaintiffs only make conclusory allegations of proximate cause. *See* DE 13, ¶ 207. This is insufficient.

## VII. Plaintiffs' Claims Under The Nevada Deceptive Trade Practices Act Fail (Counts XXII & XXIII)

For the reasons stated in the motion to dismiss filed by DLA and Wassgren, adopted by Fox, the claims against Fox under the Nevada Deceptive Trade Practices Act ("NDTPA") fail to state a claim. *First*, Plaintiffs fail to plausibly allege that Fox "knowingly" made any misrepresentation. NRS § 598.092(8). Moreover, Plaintiffs cannot rely on Fox's alleged communications with sales agents to establish a claim because sales agents were not "a party to a transaction." *Id.*

*Second*, Plaintiffs' aiding and abetting NDTPA claim fails because no case recognizes such a claim. Indeed, the NDTPA requires a plaintiff to demonstrate "an act of consumer fraud *by the defendant*"—not a third party who the defendant allegedly assisted. *See Bertsch v. Discover Fin. Servs.*, 2020 WL 1170212, at *5 (D. Nev. Mar. 11, 2020). Thus, this claim fails.

---

[31] Plaintiffs appear to adopt the version of the test that has been criticized by the California Supreme Court as being "too amorphous and provid[ing] too little guidance to courts and businesses." *Cel-Tech*, 20 Cal. 4th at 185.

## VIII.   Plaintiffs' Claims Under The Elder Abuse Act Fail (Count VII)

For the reasons stated in the motion to dismiss filed by DLA and Wassgren, adopted by Fox, the claims against Fox under the California Elder Abuse Act fail to state a claim. *First*, Plaintiffs' elder abuse claim fails because nowhere do they allege that Fox actually took the plaintiffs' property. § 15610.30(a)(1). Rather, Plaintiffs allege that Fox "*engaged in conduct* that took" the plaintiff's property. *See* DE 13, ¶ 200. This is insufficient. S*ee Du Pont v. Prudential Ins. Co.*, 2019 WL 4417494, at *16 (C.D. Cal. May 29, 2019) (no liability for financial abuse under § 15610.30(a)(1) where defendants did not receive any funds).

*Second*, Plaintiffs cannot establish Fox committed an indirect violation by allegedly assisting in the alleged wrongful conduct because Plaintiffs cannot prove actual knowledge of the wrongful conduct by Fox. *See Das*, 186 Cal. App. 4th at 744-45. The provision of "ordinary services that effectuate financial abuse by a third party" does not qualify as assistance unless the provider "knew of the third party's wrongful conduct." *Id.* at 745. As shown above, Plaintiffs fail to allege such knowledge.[32]

*Finally*, Plaintiffs have not plausibly alleged that Fox "knew or should have known its conduct" in assisting EquiAlt in issuing or selling the fixed-rate debentures was "likely to harm" an elder. Merely being "incorrect" about a conclusion of law that results in alleged harm to an elder fails to satisfy the statute as a matter of law. *See, e.g.*, *Paslay v. State Farm Gen. Ins. Co.*, 28 Cal. App. 4th 639, 657–59 (Ct. App. 2016); *Interiano v. Colonial Life & Accident Ins. Co.*, 2020 WL 3124223, at *9 (C.D. Cal. May 18, 2020). Finally, there is no allegation that Fox knew the plaintiffs qualified as "elders" under the statute.

---

[32] *See also Du Pont*, 2019 WL 4417494, at *16 (C.D. Cal. May 29, 2019) ("failing to supervise," "failing to inquire," and "failing to confirm . . . sound in negligence" and are insufficient to state claim that defendant assisted financial abuse).

## IX.    Plaintiffs' Blue Sky Law Registration Claims Fail Under NSMIA (In Part, Counts IV, IX, XV & XIX)

The National Securities Markets Improvement Act of 1996 ("NSMIA")[33] amended the Securities Act of 1933 to eliminate dual regulation of "covered securities" by expressly preempting state registration laws. 15 U.S.C. § 77r; *Temple v. Gorman*, 201 F. Supp. 2d 1238, 1242 (S.D. Fla. 2002). "[A] security is 'covered' if it is sold in a transaction that is exempt from registration pursuant to SEC rules or regulations issued under 15 U.S.C. § 77d(2)." *Id.* at 1243. If NSMIA preemption applies, the offering is not subject to state registration and any claims that the offering failed to comply with the state-imposed registration requirements are barred.

While courts are split on whether the offering must actually qualify for exemption under federal law to be entitled to preemption, the Eleventh Circuit has not addressed this question and the only Florida federal court to do so has permitted preemption regardless of whether the offerings actually complied with federal law. *Temple*, 201 F. Supp. 2d at 1242 & 1244. Here, Plaintiffs allege that the EquiAlt securities were sold pursuant to Regulation D and Rule 506. DE 13, ¶¶ 42-43. Thus, under *Temple*, all registration claims brought under California, Arizona, Colorado and Nevada law are preempted and subject to dismissal.

## CONCLUSION

Plaintiffs have failed to state a claim upon which relief can be granted.  Accordingly, all claims against Fox should be dismissed pursuant to Rules 9(b) and 12(b)(6).

---

[33] By its own terms, NSMIA does not preempt fraud claims brought under state law.

Respectfully submitted,

*/s/ William J. Schifino, Jr.*
William J. Schifino, Jr.
Florida Bar No.:  564338
David R. Atkinson
Florida Bar No.:  767239
Lauren V. Purdy
Florida Bar No. 93943
Justin P. Bennett
Florida Bar No. 112833
wschifino@gunster.com
datkinson@gunster.com
lpurdy@gunster.com
jbennett@gunster.com
kkovach@gunster.com
mmargolese@gunster.com
awinsor@gunster.com
eservice@gunster.com
Gunster, Yoakley & Stewart, P. A.
401 East Jackson Street, Suite 2500
Tampa, Florida 33602
(813) 228-9080; Fax: (813) 228-6739

*Counsel for Fox Rothschild LLP*

## CERTIFICATE OF SERVICE

I hereby certify that on November 11, 2020, I electronically filed the foregoing with the Clerk of Court by using the Court's CM/ECF system, thereby serving this document on all attorneys of record in this case.

*/s/ William J. Schifino, Jr.*
William J. Schifino, Jr.

ACTIVE 12703318.2