## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

RICHARD GLEINN and PHYLLIS GLEINN,
CARY TOONE, JOHN CELLI and MARIA CELLI,
EVA MEIER, GEORGIA MURPHY, STEVEN J.
RUBINSTEIN and TRACEY F. RUBINSTEIN, as
trustees for THE RUBINSTEIN FAMILY LIVING
TRUST DATED 6/25/2010, BERTRAM D.
GREENBERG, as trustee for THE GREENBERG
FAMILY TRUST, BRUCE R. HANNEN and
GERALDINE MARY HANNEN, ROBERT
COBLEIGH, RORY O'NEAL and MARCIA O'NEAL,
and SEAN O'NEAL, as trustee for THE O'NEAL
FAMILY TRUST DATED 4/6/2004, individually and
on behalf of others similarly situated,

Case No.:  8:20-cv-01677-MSS-CPT

     Plaintiffs,

v.

PAUL WASSGREN, an individual; DLA PIPER (US),
a limited liability partnership and FOX ROTHSCHILD
LLP, a limited liability partnership,

     Defendants.

_____/

## PAUL WASSGREN'S MOTION TO DISMISS
## AMENDED CLASS ACTION COMPLAINT

Simon A. Gaugush
Florida Bar No. 440050
D. Matthew Allen
Florida Bar No. 866326
Erin J. Hoyle
Florida Bar No. 117762
CARLTON FIELDS, P.A.
P.O. Box 3239
Tampa, FL 33601-3239
Telephone:  813.223.7000
Facsimile:  813.229.4133
E-mail:  sgaugush@carltonfields.com
E-mail:  mallen@carltonfields.com
E-mail:  ehoyle@carltonfields.com
*Counsel for Paul Wassgren*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... iii

INTRODUCTION .......................................................................................... 1

FACTUAL ALLEGATIONS .......................................................................... 3

STANDARD OF REVIEW ............................................................................ 6

MOTION TO DISMISS GROUNDS ............................................................. 7

I.  COUNTS 1, 6, 12, 17, 18, 21: THE COMMON LAW CLAIMS FOR AIDING AND ABETTING FRAUD SHOULD BE DISMISSED........................................................... 8

   A.  The Complaint Fails To Allege Plausible Facts That Wassgren Provided "Substantial Assistance" To EquiAlt's Wrongdoing. ............................ 10

   B.  The Amended Complaint Fails To Allege that Wassgren Had Actual Knowledge of the Underlying Fraud Violation. ................................... 19

   C.  Count 18 Should Be Dismissed as a Matter of Law. ........................ 23

II.  COUNTS 2, 5, 13, 16, AND 20 FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY SHOULD BE DISMISSED. ............................................. 23

   A.  Plaintiffs Fail To Adequately Describe A Fiduciary Relationship. ....... 24

   B.  Plaintiffs Fail To Allege Substantial Assistance and Actual Knowledge........ 26

III.  COUNT 3 FOR FLORIDA CIVIL CONSPIRACY SHOULD BE DISMISSED. .......... 27

IV.  PLAINTIFFS' CLAIMS UNDER STATE SECURITIES LAWS FAIL (COUNTS 4, 9, 10, 11, 14, 15, and 19). .............................................. 30

V.  STATUTES OF REPOSE................................................................. 30

VI.  PLAINTIFFS' CALIFORNIA UNFAIR COMPETITION CLAIM FAILS (COUNT 8)……..................................................................... 31

VII.  THE NEVADA DECEPTIVE TRADE PRACTICES CLAIMS FAIL (COUNTS 22 and 23). ........................................................... 33

VIII. PLAINTIFFS' ELDER ABUSE CLAIM SHOULD BE DISMISSED (COUNT 7). ...... 34

CONCLUSION................................................................................... 34

CERTIFICATE OF SERVICE ..................................................................... 36

# TABLE OF AUTHORITIES

## Cases

*Alhassid v. Bank of Am., N.A.*,
    60 F. Supp. 3d 1302 (S.D. Fla. 2014) ..............................................................27, 28

*Alvarez LLC v. Blazar Tech. Sols., LLC*,
    2019 WL 3205952 (D. Colo. July 16, 2019) ........................................................26

*Am. Credit Card Tel. Co. v. Nat'l Pay Tel. Corp.*,
    504 So. 2d 486 (Fla. 1st DCA 1987) ....................................................................29

*Am. Dental Ass'n v. Cigna Corp.*,
    605 F.3d 1283 (11th Cir. 2010) ...........................................................................35

*Am. United Life Ins. Co. v. Martinez*,
    480 F.3d 1043 (11th Cir. 2007) ...........................................................................10

*Arbitrajes Finacnieros, S.A. v. Bank of Am., N.A.*,
    605 F. App'x 820 (11th Cir. 2015) .......................................................................23

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................... *passim*

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................6, 7, 25, 32

*Bertsch v. Discover Fin. Servs.*,
    2020 WL 1170212 (D. Nev. Mar. 11, 2020) ........................................................33

*Broad-Bussell Family L.P. v. Bayou Grp. LLC (In re Bayou Hedge Funds Invest. Litig.)*,
    472 F. Supp. 2d 528 (S.D.N.Y. 2007)..................................................................19

*Bullock v. Carver*,
    297 F.3d 1036 (10th Cir. 2002) ...........................................................................15

*In re Cascade Intern. Sec. Litig.*,
    840 F. Supp. 1558 (S.D. Fla. 1993) .....................................................................11

*Casey v. U.S. Bank Nat. Assn.*,
    127 Cal. App. 4th 1138 (2005) ...............................................................................9

*Cel-Tech Comm'ns, Inc. v. L.A. Cell Tel. Co.*,
    20 Cal. 4th 163 (1999) ....................................................................................31, 32

*Cordell Consultant, Inc. Money Purchase Plan and Tr. v. Abbott,*
  2012 WL 13148744 (S.D. Fla. July 11, 2012)................................................................11, 20

*Court Appointed Receiver of Lancer Offshore v. Citgo Group, Ltd.,*
  2008 WL 926513 (S.D. Fla. Mar. 31, 2008)................................................................21

*Das v. Bank of Am., N.A.,*
  186 Cal. App. 4th 727 (2010) ........................................................................33, 34

*Dawson v. Withycombe,*
  216 Ariz. 84 (Ct. App. 2007) ........................................................................21

*DeBlasio v. Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,*
  2008 WL 2594819 (S.D.N.Y. June 26, 2008) ........................................................23

*Denny v. Barber,*
  576 F.2d 465 (2d Cir. 1978) (Friendly, J.)........................................................34

*Dickerson v. Alachua County Comm'n,*
  200 F.3d 761 (11th Cir. 2000) ........................................................................29

*Dileo v. Ernst & Young,*
  901 F.2d 624 (7th Cir. 1990) (Easterbrook, J.)............................................ *passim*

*Eagletech Commc'ns, Inc. v. Bryn Mawr Inv. Grp., Inc.,*
  79 So. 3d 855 (Fla. 4th DCA 2012) ........................................................................28

*El Camino Res. Ltd. v. Huntington Nat. Bank,*
  722 F. Supp. 2d 875 (W.D. Mich. 2010) ................................................................12, 34

*Eurycleia Partners, LP v. Seward & Kissel, LLP,*
  910 N.E. 2d 976 (N.Y. 2009)........................................................................24

*Farese v. Scherer,*
  342 F.3d 1223 (11th Cir. 2003) ........................................................................29

*Flores v. Gain Capital Grp., LLC,*
  2018 WL 6133644 (C.D. Cal. June 20, 2018) ........................................................24

*Freeney v. Bank of Am. Corp.,*
  2016 WL 5897773 (C.D. Cal. Aug. 4, 2016)........................................................34

*Friedman v. Arizona World Nurseries,*
  730 F. Supp. 521 (S.D.N.Y. 1990) ........................................................................14

*G.K. Las Vegas LP v. Simon Prop. Group, Inc.,*
  460 F. Supp. 2d 1246 (D. Nev. 2006)........................................................................9

*Garfield v. NDC Health Corp.,*
  466 F.3d 1255 (11th Cir. 2006) ........................................................................6, 7

*Giarratano v. Johnson*,
   521 F.3d 298 (4th Cir. 2008) ...........................................................................17

*Gould v. Mellick & Sexton*,
   819 A.2d 216 (Conn. 2003) ...........................................................................24

*Greenfield Plaza Inv'rs LLC v. Stearns Bank N.A.*,
   2012 WL 13024089 (D. Ariz. Aug. 14, 2012).............................................26

*Groom v. Bank of Am.*,
   2012 WL 50250 (M.D. Fla. Jan. 9, 2012).............................................10, 20

*Guilfoyle v. Olde Monmouth Stock Transfer Co.*,
   130 Nev. 801 (2014) ..............................................................................23, 26

*Hall v. Time Inc.*,
   158 Cal. App. 4th 847 (2008), *as modified* (Jan. 28, 2008)......................32

*Harborview Value Masterfund v. Freeline Sports, Inc.*,
   2012 WL 612358 (S.D.N.Y. Feb. 23, 2012).................................................2

*Hefferman v. Hunter*,
   189 F.3d 405 (3d Cir. 1999)........................................................................29

*Hicks v. Lewis*,
   904 F. Supp. 1368 (M.D. Fla. 1995) ..........................................................13

*Hodges v. Buzzeo*,
   193 F. Supp.2d 1279 (M.D. Fla. 2002).........................................................5

*Hodsdon v. Mars, Inc.*,
   891 F.3d 857 (9th Cir. 2018) ................................................................31, 32

*HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*,
   302 F. Supp. 3d 1319 (M.D. Fla. 2016), *aff'd*, 703 F. App'x 814 (11th Cir.
   2017) ...........................................................................................................28

*IIG Wireless, Inc. v. Yi*,
   22 Cal. App. 5th 630 (2018) .........................................................10, 19, 25

*Int'l Fid. Ins. Co. v. Americaribe-Moriarty JV*,
   906 F.3d 1329 (11th Cir. 2018) ..................................................................17

*Janus Capital Group, Inc. v. First Derivative Traders*,
   131 S. Ct. 2296 (2011).................................................................................13

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001)...........................................................................3

*Kirwin v. Price Communications Corp.*,
   391 F.3d 1323 (11th Cir. 2004) ......................................................28

*Lamm v. State St. Bank & Tr.*,
   749 F.3d 938 (11th Cir. 2014) ..................................................20, 21

*Landow v. Bartlett*,
   2019 WL 8064074 (D. Nev. Nov. 18, 2019) ..............................25

*Lanz v. Resolution Trust Corp.*,
   764 F. Supp. 176 (S.D. Fla. 1991) ............................................24

*Lawrence v. Bank of Am., N.A.*,
   455 F. App'x 904 (11th Cir. 2012) ....................................9, 19, 20

*Linville v. Ginn Real Estate Co., LLC*,
   697 F. Supp. 2d 1302 (M.D. Fla. 2010) (Scriven, J.) ..............7

*Lipsig v. Ramlawi*,
   760 So. 2d 170 (Fla. 3d DCA 2000) ........................................29

*Mandelbaum v. Fiserv, Inc.*,
   787 F. Supp. 2d 1226 (D. Colo. 2011).....................................23

*Mann v. Palmer*,
   713 F.3d 1306 (11th Cir. 2013) ..................................................6

*McAndrew v. Lockheed Martin Corp.*,
   206 F.3d 1031 (11th Cir. 2000) ................................................29

*Medved v. DeAtley*,
   2013 WL 4873054 (D. Colo. Sept. 11, 2013)...........................22

*Mizzaro v. Home Depot, Inc.*,
   544 F.3d 1230 (11th Cir. 2008) ..................................................7

*Mosier v. Stonefield Josephson, Inc.*,
   815 F.3d 1161 (9th Cir. 2016) ..................................................19

*MVW Mgt., LLC v. Regalia Beach Developers LLC*,
   230 So. 3d 108 (Fla. 3d DCA 2017) ........................................17

*Nasrawi v. Buck Consultants LLC*,
   231 Cal. App. 4th 328 (Cal. Ct. App. 2014) ............................23

*O'Boyle v. Sweetaple*,
   2015 WL 13574304 (S.D. Fla. June 4, 2015) ..........................29

*O'Halloran v. First Union Nat'l Bank of Fla.*,
   350 F.3d 1197 (11th Cir. 2003) ................................................20

*In re Palm Beach Fin. Partners*,
    488 B.R. 758 (Bankr. S.D. Fla. 2013)..............................................................24, 27

*Pickard v. Maritime Holding Corp.*,
    161 So. 2d 239 (Fla. 3d DCA 1964) ........................................................................13

*Pritchard v. Levin*,
    -- So.3d --, 2020 WL 2050691 (Fla. 3d DCA Apr. 29, 2020) ................................9

*Richter v. Wells Fargo Bank NA*,
    2015 WL 163086 (M.D. Fla. Jan. 13, 2015)..........................................................10

*Schatz v. Rosenberg*,
    943 F.2d 485 (4th Cir. 1991) ..........................................................................11, 14

*Schmidt v. Fleet Bank*,
    1998 WL 47827 (S.D.N.Y. Feb. 4, 1998)................................................................2

*SEC v. Brian Davison, et al.*,
    Case No. 8:20-cv-325-MSS-AEP (M.D. Fla.) ....................................................5, 22

*SEC v. Levin*,
    849 F.3d 995 (11th Cir. 2017) ................................................................................4

*Sender v. Mann*,
    423 F. Supp. 2d 1155 (D. Colo. 2006).................................................9, 10, 25, 26

*Silva v. Potter*,
    2006 WL 3298543 (M.D. Fla. Sept. 25, 2006) ......................................................16

*Spinner v. Nutt*,
    631 N.E.2d 542 (Mass. 1994) ................................................................................11

*Tai-Si Kim v. Kearney*,
    2010 WL 3433130 (D. Nev. Aug. 30, 2010) ..........................................................21

*Toy v. TriWire Eng'g Sols, Inc.*,
    2010 WL 3448535 (N.D. Cal. Sept. 1, 2010) ........................................................32

*Turnberry Vill. N. Tower Condo. Ass'n, Inc. v. Turnberry Vill. S. Tower Condo.*
    *Ass'n, Inc.*,
    224 So. 3d 266 (Fla. 3d DCA 2017) .................................................................23, 25

*United States v. Jones*,
    2010 WL 2679964 (E.D. Wis. July 2, 2010) ....................................................15, 16

*United States v. Kellogg*,
    2010 WL 6446081 (E.D. Ky. Dec. 27, 2010) .........................................................15

*Walters v. Blankenship,*
   931 So. 2d 137 (Fla. 5th DCA 2006). ...................................................................27

*Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co.,*
   894 F. Supp. 777 (D. Vt. 1995)..........................................................................15

*Wells Fargo Bank v. Ariz. Laborers, Teamsters and Cement Masons Local No.*
   *395 Pension Tr. Fund,*
   201 Ariz. 474 (Ariz. 2002)...........................................................................9, 23, 25

*Wiand v. Wells Fargo Bank, N.A.,*
   938 F. Supp. 2d 1238 (M.D. Fla. 2013) ...............................................8, 20, 21, 26

*Woods v. Barnett Bank of Ft. Lauderdale,*
   765 F.2d 1004 (11th Cir. 1985) .............................................................................9

*Worldspan Marine Inc. v. Comerica Bank,*
   2020 WL 1238732 (S.D. Fla. Feb. 27, 2020) ....................................................10

*Ziemba v. Cascade Intern., Inc.,*
   256 F.3d 1194 (11th Cir. 2001) .............................................................................7

*ZP No. 54 L.P. v. Fidelity & Deposit Co. of Md.,*
   917 So. 2d 368 (Fla. 5th DCA 2005) .....................................................................9

## Statutes and Regulations

17 C.F.R. § 230.501(a)(5) & (6), (e)(1)(iv) ............................................................4

17 C.F.R. § 230.506 .................................................................................................4

17 C.F.R. § 230.501(a)..........................................................................................18

17 C.F.R. § 230.506(b)(2)(i) .................................................................................18

C.R.S. §§ 11-41-501, 11-51-301, 11-51-604 .......................................................30

15 U.S.C. § 77d(a)(2).............................................................................................4

Arizona Securities Act §§ 44-1841, 44-1842, 44-2001, 44-2003, and 44-2004(A) ...................30

Cal. Bus. & Prof. Code § 17204 (UCL)...........................................................31, 32

Cal. Corp. Code §§ 25110, 25401, 25501, 25503, 25506, 25507................................30

Cal. Welfare & Institutions Code §§ 15610.07 and 15610.30........................................33

National Securities Markets Improvement Act of 1996, 15 U.S.C. § 77r ...................................30

Nevada Securities Act §§ 90.301, 90.460, 90.570, 90.660, and 90.670 ........................................30

NRS § 598.092(8) ..................................................................................................................32

**Other Authorities**

Rule 506(b) of SEC Regulation D ........................................................................... *passim*

Defendant Paul Wassgren respectfully moves to dismiss the amended complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

## <u>INTRODUCTION</u>

This is a putative class action arising out of an alleged Ponzi scheme operated by EquiAlt, LLC ("EquiAlt"), a private real estate investment firm, and its principals and agents, involving the sale of more than $170 million in unregistered securities to at least 1,100 investors in multiple states. Almost nine months ago, the SEC filed a complaint against EquiAlt and its principals. An asset freeze is in place and this Court has appointed a receiver to identify, marshal, and safeguard EquiAlt's assets for the benefit of its investors. Instead of allowing the receivership to take its course, Plaintiffs filed this putative class action. They did not, however, sue the third parties who sold them the EquiAlt securities and supposedly made misrepresentations about those securities. Instead, Plaintiffs set their sights on a lawyer, Paul Wassgren ("Wassgren")—with whom they had no dealings—and his current and former law firms, DLA Piper LLP (US) ("DLA") and Fox Rothschild, LLP ("Fox"), solely based on the routine legal services Wassgren provided to EquiAlt.

When fraud is alleged, the stakes are high, especially for licensed professionals. That is why Rule 9(b) requires Plaintiffs to plead particularized facts to support such claims. Plaintiffs attempt to create the impression that Wassgren was working hand-in-hand with EquiAlt's principals and purported sales agents to perpetrate a fraud. But the amended complaint fails to allege any specific facts to support the notion that Wassgren *knew* his clients were ignoring his advice or had any *motive* to assist in their alleged fraud. In reality, this case presents a massive overreach—an attempt to blame an attorney for the alleged misdeeds of one of his clients. As Plaintiffs have it, a lawyer may be accused of fraud in public pleadings and have his reputation tarnished merely because his client ignored his legitimate legal advice and perverted it to its own, undisclosed aims. Rule 9(b) requires more.

The small number of factual allegations in the 89-page amended complaint that actually describe the legal services that Wassgren provided to EquiAlt make clear that these services consisted of routine transactional advice provided by outside counsel: assisting in formation of various Funds and raising capital in a manner consistent with relevant securities laws, such as the registration exemption provided by Rule 506(b) of SEC Regulation D. Like every client, EquiAlt had a choice: to follow Wassgren's advice or stray from it. Allegations that EquiAlt ignored Wassgren's advice are not enough to survive a motion to dismiss.

The amended complaint also fails because Plaintiffs have not alleged any plausible motive for Wassgren or the law firms to have participated in a Ponzi scheme with EquiAlt. Wassgren did not serve as EquiAlt's in-house counsel. He did not work out of EquiAlt's offices. There is no allegation that Wassgren had any investment or financial interest in EquiAlt, other than receiving the same standard legal fees he received from other clients. "People sometimes act irrationally, but . . . [o]ne who believes that another has behaved irrationally has to make a strong case."[1] *Dileo v. Ernst & Young,* 901 F.2d 624, 629 (7th Cir. 1990) (Easterbrook, J.). Plaintiffs fail to do so here.

There is one truth about all Ponzi schemes—they come to an inglorious end. *See Schmidt v. Fleet Bank*, 1998 WL 47827, at *6 (S.D.N.Y. Feb. 4, 1998) ("Ponzi schemes are doomed to collapse"). That end draws law enforcement and regulatory attention, expensive litigation, and public censure. With those consequences in mind, Plaintiffs would have this Court believe that Wassgren and two nationally renowned law firms would risk everything—their reputations, their financial well-being, and their futures—to help a client perpetrate a multi-million dollar Ponzi scheme in which they had no financial stake and, which, predictably, would collapse upon itself. This defies plausibility. *See Harborview Value Masterfund v. Freeline Sports, Inc.*, 2012 WL

---

[1] All emphasis in a quotation is supplied unless otherwise noted. All internal citations and quotation marks in a quotation are omitted unless otherwise indicated.

612358, at *11-12 (S.D.N.Y. Feb. 23, 2012) (dismissing aiding and abetting claims where "entire theory of fraud" was "implausible on its face"); *Kalnit v. Eichler*, 264 F.3d 131, 140-41 (2d Cir. 2001) (refusing to credit allegations of fraudulent conduct that "def[y] economic reason").

The amended complaint fails to plead particularized facts supporting any claim for relief against Wassgren. It should be dismissed.

## FACTUAL ALLEGATIONS[2]

EquiAlt was formed in 2011. Doc. 13, ¶¶ 29, 40. It began operations in Nevada, but later moved its offices to Tampa, Florida. *Id*. ¶¶ 1, 27. EquiAlt operated as a real estate investment company. Doc. 13, ¶¶ 4 – 5; SEC Docs. 1, 11. At first, EquiAlt exclusively sold fixed-rate debentures—that is, an unsecured bond backed solely by the general credit of the company. Doc. 13, ¶¶ 31, 87. Later, it offered investments in a real estate investment trust ("REIT") and a Qualified Opportunity Zone (QOZ") fund. *Id*. ¶¶ 37, 56. Brian Davison ("Davison") served as EquiAlt's CEO and Barry Rybicki ("Rybicki") was its Managing Director. *Id*. ¶¶ 4, 22-23. Plaintiffs allege that Davison and Rybicki began promoting the sale of EquiAlt's securities through a network of unlicensed sales agents "[s]hortly after EquiAlt was formed in 2011." *Id.* ¶ 32.

Wassgren served as outside counsel to EquiAlt. *Id*. ¶ 36. He advised EquiAlt regarding compliance with securities laws. *Id*. In particular, Wassgren drafted offering documents for EquiAlt's debenture funds that were designed to be exempt from registration under Rule 506(b) of SEC Regulation D ("Reg D"). *Id*. ¶¶ 42, 66. Reg D permits companies to raise capital by conducting a private offering without registering the security with the SEC, as long as certain

---

[2] Wassgren accepts as true the well-pleaded fact allegations of the amended complaint, as he must on a motion to dismiss. The Court, however, need not accept inferences drawn by the Plaintiffs if such inferences are unsupported by the facts set out in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Nor must the Court accept legal conclusions cast in the form of factual allegations. *Id.* at 678.

requirements are met, including that the security is sold to no more than 35 non-accredited investors. *Id.* ¶¶ 67 – 68.[3] The exemption from registration under Reg D is entirely lawful. *See* 17 C.F.R. § 230.506.

The amended complaint characterizes EquiAlt's entire operation as a Ponzi scheme. Doc. 13, ¶¶ 1, 3. Plaintiffs baldly assert that EquiAlt and its promoters "could not have perpetuated the massive fraudulent Ponzi scheme without the active assistance and participation of their lawyers," but the amended complaint does not allege any specific improper acts undertaken by Wassgren. Doc. 13, ¶ 2. To the contrary, it merely alleges that Wassgren provided standard legal advice and services similar to what any other transactional lawyer would typically provide. Wassgren's alleged "active assistance and participation" consisted of the following:

- **Providing legal advice.** Wassgren "served as legal counsel for EquiAlt" and "advised and assisted EquiAlt on numerous matters, including compliance with applicable Federal and State securities laws." *Id.* ¶ 36. Wassgren also provided advice on "strategic long-term planning for EquiAlt." *Id.* ¶ 58.

- **Defending an investigation.** Wassgren defended an Arizona investigation into EquiAlt's operations. *Id.* ¶ 37.

- **Forming Funds.** Wassgren assisted EquiAlt in forming and offering a $500 million fund to purchase and develop properties within Qualified Opportunity Zones. *Id.*

- **Preparing articles of organization.** Wassgren "prepared and filed" with the Nevada Secretary of State articles of organization for each of the EquiAlt Funds, and articles of organization in Florida for at least 15 different limited liability companies to hold properties purchased through the Funds. *Id.* ¶¶ 40, 104.

- **Drafting private placement memoranda.** Wassgren drafted the Private Placement Memoranda ("PPMs") used by EquiAlt to sell the securities. *Id.* ¶¶ 40-41, 43-44, 47.

---

[3] *See also* 15 U.S.C. § 77d(a)(2) (exempting from registration requirements transactions by an issuer not involving a public offering); 17 C.F.R. § 230.501(a)(5) & (6), (e)(1)(iv), § 230.506(b)(1), (b)(2)(i) (defining an accredited investor, excluding accredited investors from calculation of number of purchasers, and limiting private offerings to 35 purchasers); *SEC v. Levin*, 849 F.3d 995, 1001 (11th Cir. 2017) (describing Reg D exemption and noting that "[a]ccredited investors are not counted toward the 35").

- **Drafting related offering documents.** Wassgren drafted the Subscription Agreements, EquiAlt Securities, and Prospective Purchaser Questionnaires ("Investor Questionnaires") used to attest that investors were "accredited." *Id.* ¶ 42.

- **Informing investors that he prepared the documents.** Wassgren "consented" to the inclusion of his name and the law firms' names in the PPMs. *Id.* ¶ 45.

- **Advising sales agents.** Wassgren allegedly advised sales agents on their commissions and provided other advice to them. *Id.* ¶¶ 49-57.

Critically, the amended complaint fails to allege any particularized facts from which one could plausibly infer that Wassgren had actual knowledge of the alleged wrongdoing by EquiAlt, that he aided and abetted that wrongdoing, or that he had any motive to do so.

Tellingly, much of the amended complaint is devoted to allegations of misconduct against EquiAlt, Davison, and Rybicki. Doc. 13, ¶¶ 4–5, 21–25, 29–35, 44, 52, 56, 82–84, 88, 93–94, 96 108–109. EquiAlt and its principals are defendants in a separate action filed in this Court. *See SEC v. Brian Davison, et al.,* Case No. 8:20-cv-325-MSS-AEP (M.D. Fla.) (the "SEC Action"). On February 11, 2020, the SEC filed a complaint against EquiAlt and this Court appointed a receiver three days later. Doc. 13, ¶¶ 4-5; SEC Docs. 1, 11. In fact, Plaintiffs rely heavily on the SEC's allegations against EquiAlt, going so far as to include the SEC's complaint and several pleadings filed in the SEC Action as exhibits to their amended complaint. *Compare* Doc. 13-1, Ex. B (incorporating sub-exhibits A – DD) *with* SEC Doc. 84, Exs. A – DD. But the SEC's allegations against EquiAlt do not make a case against Wassgren.

For example, the SEC does not allege in its action that EquiAlt started out as a Ponzi scheme. Rather, the SEC's attorney represented to this Court multiple times in a July 31, 2020 hearing that EquiAlt "has been a Ponzi [scheme] since 2016."[4] *See **Exhibit A**,* Excerpts from

---

[4] To support their claim of secondary liability against Wassgren, Plaintiffs are relying on the activities and rulings in the SEC Action to establish that EquiAlt was engaged in fraud. "In determining whether to grant a Rule 12(b)(6) motion, the Court may consider. . . matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint" without converting the motion to dismiss into

Motion Hearing in SEC Action, Tr. at 14, 16, 48 (July 31, 2020). According to Mark Dee, the SEC's senior accountant whose declaration Plaintiffs attached to their amended complaint as Exhibit C (Doc. 13-1, at 214 – 225), Fund I started raising money from investors in 2011, *id*. ¶ 16; Fund II began in July 2013, *id*. ¶ 24; Fund III started in July 2013, *id*. at 30; and the EA SIP Fund started raising money in April 2016, *id*. ¶32. In the SEC's view, EquiAlt started operating as a Ponzi scheme *after* Wassgren assisted EquiAlt in establishing the first three funds, and possibly even the fourth. *See Exhibit A*. Even Plaintiffs concede EquiAlt "*morphed* into a Ponzi scheme," it didn't start out that way. Doc. 13 ¶ 30 (emphasis added). Taking Plaintiffs' allegations at face value, EquiAlt purportedly turned into a Ponzi scheme *after* Wassgren drafted offering materials for several of the Funds, meaning Wassgren did not set up the Funds to operate as a fraud.

## STANDARD OF REVIEW

In considering whether a complaint states a claim for relief under Federal Rule of Civil Procedure 12(b)(6), the factual allegations, taken as true, must be sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court is not required to accept as true claims based merely on "information and belief." *See Mann v. Palmer,* 713 F.3d 1306, 1315 (11th Cir. 2013). A plaintiff must plead sufficient facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint must go beyond making

---

one for summary judgment. *Hodges v. Buzzeo,* 193 F. Supp.2d 1279, 1281 (M.D. Fla. 2002). "[I]n the context of securities fraud, 'SEC documents [may be treated] as public records capable of being judicially noticed at the motion to dismiss stage.'" *Garfield v. NDC Health Corp.,* 466 F.3d 1255, 1260 n.2 (11th Cir. 2006).  By taking judicial notice of SEC documents, a district court does not transform a motion to dismiss into a motion for summary judgment. *Id.*

6

allegations that are "merely consistent with" a defendant's liability. *Id.* Plaintiffs must provide the requite factual content to exclude "more likely explanations" for Defendants' actions. *Id.* Certainly, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555.

Rule 9(b) stands like a sentry at the gate, requiring Plaintiffs to support all fraud-based claims with particularized factual allegations. *See Linville v. Ginn Real Estate Co., LLC,* 697 F. Supp. 2d 1302, 1306 (M.D. Fla. 2010) (Scriven, J.) ("[A] pleading that contains allegations of fraud is subject to a heightened pleading" requirement); *Mizzaro v. Home Depot, Inc.,* 544 F.3d 1230, 1237 (11th Cir. 2008) ("[S]ecurities fraud claims, like other types of fraud claims, have always been subject to Fed. R. Civ. P. 9(b)'s heightened pleading requirements, which require a complaint 'to state with particularity the circumstances constituting fraud.'"). Rule 9(b) requires the pleader to describe "the who, what, when, where, and how" of the purported fraud. *Garfield v. NDC Health Corp.,* 466 F.3d 1255, 1262 (11th Cir. 2006). Thus, a complaint alleging fraud must set forth:

> (1) precisely what statements were made in what documents . . . , (2) the time and place of each such statement and the person responsible for making [them], (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Ziemba v. Cascade Intern., Inc.,* 256 F.3d 1194, 1202 (11th Cir. 2001).

## **MOTION TO DISMISS GROUNDS**[5]

The vast majority of the 334 paragraphs in Plaintiffs' amended complaint contain allegations of misconduct by EquiAlt, Davison, Rybicki, and the third parties who sold EquiAlt

---

[5] Wassgren joins in and incorporates by reference the arguments set forth by DLA and Fox in their respective motions to dismiss the amended complaint. *See* Docs. 61 and 62.

securities to Plaintiffs. Plaintiffs fail to allege any particularized facts that Wassgren knowingly assisted in any of the alleged misconduct. Instead, Plaintiffs try to fold Wassgren into EquiAlt's alleged misconduct by asserting, in conclusory fashion, that "EquiAlt and its promoters could not have perpetuated the massive fraudulent Ponzi scheme without the active assistance and participation of their lawyers." Doc. 13, ¶ 2. This is the legal equivalent of "he must have known" or "of course he was in on it." *See Wiand v. Wells Fargo Bank, N.A.,* 938 F. Supp. 2d 1238, 1244 (M.D. Fla. 2013) (establishing actual knowledge for an aiding and abetting claim requires more than proving the defendant "should have known"). More is required to satisfy Rule 9(b).

Plaintiffs' allegations would only be plausible in a hypothetical world where lawyers know everything about their clients, are capable of decoding the clients' true intentions, and can predict their clients' future behavior. The truth is that clients don't always disclose all material information to their attorneys. Sometimes clients conceal information from their attorneys. And sometimes clients disregard good advice and simply do what they want. These are universal truths in the practice of law. Against *that* backdrop, Plaintiffs should be required to offer this Court more than allegations that Wassgren provided legal advice to EquiAlt that it used in perpetrating its alleged fraud scheme. This is especially true where, as here, there is no motive, evidence of intent, or logic to Wassgren participating in any fraud scheme perpetrated by EquiAlt. *See Dileo v. Ernst & Young,* 901 F.2d 624, 629 (7th Cir. 1990) (Easterbrook, J.) (affirming dismissal of complaint which failed to allege what the defendant had "to gain from any fraud" and noting that [f]ees for two years' audits could not approach the losses [E&Y] would suffer" to its reputation and business).

I. **COUNTS 1, 6, 12, 17, 18, 21: THE COMMON LAW CLAIMS FOR AIDING AND ABETTING FRAUD SHOULD BE DISMISSED.**

Counts 1 (Florida), 6 (California), 12 (Arizona), 17 – 18 (Colorado), and 21 (Nevada) allege aiding and abetting fraud under state law. Plaintiffs fail, however, to allege any facts

plausibly showing that Wassgren *knowingly* joined, substantially assisted, or ratified EquiAlt's alleged fraud. "*Actual* knowledge" is the key that unlocks the door to liability, but Plaintiffs' allegations amount to nothing more than an assurance that if given the chance to open the door, knowledge will be found on the other side. That is not enough to survive a motion to dismiss.

Although the specific requirements of each jurisdiction may differ, at a minimum, a plaintiff alleging aiding and abetting fraud must sufficiently plead "(1) an underlying fraud[6] on the part of the primary wrongdoer; (2) **knowledge** of the underlying violation by the alleged aider and abettor; and (3) the rendering of **substantial assistance** in committing the wrongdoing by the aider and abettor."[7] *Lawrence v. Bank of Am., N.A.,* 455 F. App'x 904, 906 (11th Cir. 2012); *ZP No. 54 L.P. v. Fidelity & Deposit Co. of Md.,* 917 So. 2d 368, 372 (Fla. 5th DCA 2005); *see Casey v. U.S. Bank Nat. Assn.,* 127 Cal. App. 4th 1138, 1144 (2005) (aiding and abetting fraud in California requires proof of defendant's knowledge of the fraudulent conduct and substantial assistance or encouragement to that conduct); *G.K. Las Vegas LP v. Simon Prop. Group, Inc.*, 460 F. Supp. 2d 1246, 1261 (D. Nev. 2006) (same); *Wells Fargo Bank v. Ariz. Laborers, Teamsters and Cement Masons Local No. 395 Pension Tr. Fund,* 201 Ariz. 474, 485 (Ariz. 2002) (same); *Sender v. Mann*, 423 F. Supp. 2d 1155, 1175–76 (D. Colo. 2006) (same).

As a general matter, courts are "mindful of the potentially devastating impact aiding-and-abetting liability might have on commercial relationships," as between an attorney and his client. *See Woods v. Barnett Bank of Ft. Lauderdale*, 765 F.2d 1004, 1009 (11th Cir. 1985). That is why

---

[6] *Pritchard v. Levin*, -- So.3d --, 2020 WL 2050691, at *2 (Fla. 3d DCA Apr. 29, 2020) ("The elements that must be established to prove a claim of fraud are: (1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and, (4) consequent injury by the party acting in reliance on the representation." (quoting *Townsend v. Morton,* 36 So. 3d 865, 868 (Fla. 5th DCA 2010)).

[7] For purposes of this motion, and for sake of brevity, the relevant claims for these various causes of action will be analyzed together.

the need to plead plausible facts regarding knowledge of and substantial assistance in the fraud is particularly acute in an action filed against an attorney.

Here, even if the existence of an underlying violation by EquiAlt and its principals is assumed for purposes of this motion, Plaintiffs have not complied with either Rule 8(a) or 9(b) and sufficiently alleged particularized or even plausible facts: (1) that Wassgren *knew* of EquiAlt's securities violations or Ponzi scheme machinations, and (2) rendered *substantial assistance* to EquiAlt, or its principals and sales agents in their purported wrongdoing.

### A. The Complaint Fails To Allege Plausible Facts That Wassgren Provided "Substantial Assistance" To EquiAlt's Wrongdoing.

"Substantial assistance occurs when a defendant affirmatively assists, helps conceal, or fails to act when required to do so, thereby enabling the breach to occur." *Groom v. Bank of Am.,* 2012 WL 50250, at *4 (M.D. Fla. Jan. 9, 2012). It requires the plaintiff to allege that the actions of the aider/abettor "proximately caused" the harm to the plaintiffs. *See Worldspan Marine Inc. v. Comerica Bank,* 2020 WL 1238732, at *14 (S.D. Fla. Feb. 27, 2020) ("Aiding and abetting fraud is a tort in Florida and like all torts, additionally requires a plaintiff to demonstrate *injury resulting from the alleged misconduct*."); *IIG Wireless, Inc. v. Yi*, 22 Cal. App. 5th 630, 654 (2018) ("aiding and abetting . . . necessarily requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act.'").

A "defendant does not provide substantial assistance unless his action, or inaction, was a substantial factor in causing" the underlying violation. *Richter v. Wells Fargo Bank NA,* 2015 WL 163086, at *3 (M.D. Fla. Jan. 13, 2015). This requirement cannot be satisfied "where '[t]he amount of assistance alleged is minor in comparison to the massive scope of [the] overall fraudulent scheme.'" *Id*. Reckless or negligent conduct is not enough to establish liability. *Sender v. Mann,* 423 F. Supp. 2d 1155, 1175-76 (D. Colo. 2006).

Where a cause of action is grounded in fraud, the plaintiffs' claims—including substantial assistance—must be alleged with particularity. *Am. United Life Ins. Co. v. Martinez,* 480 F.3d 1043, 1065 (11th Cir. 2007) (observing that aiding and abetting fraud claims are subject to Rule 9(b)'s particularity requirement). The amended complaint fails to satisfy this standard. Plaintiffs' allegations of aiding and abetting fall into three undeveloped categories.

**Category 1: Providing Ordinary Legal Advice.** The act of merely representing a client and rendering legal advice is not aiding and abetting, but the "ordinary activity of a lawyer." *Cordell Consultant, Inc. Money Purchase Plan and Tr. v. Abbott*, 2012 WL 13148744, at *5 (S.D. Fla. July 11, 2012); *Spinner v. Nutt,* 631 N.E.2d 542, 546 (Mass. 1994) ("An allegation that the [client] acted under the legal advice of the [attorney], without more, is insufficient to give rise to a claim that an attorney is responsible to third persons for the fraudulent acts of his clients."). In other words, substantial assistance requires more than "acting as scriveners" for a client or "conducting activities that make up the daily grist of the mill." *In re Cascade Intern. Sec. Litig.*, 840 F. Supp. 1558, 1566 (S.D. Fla. 1993), *on reconsideration*, 894 F. Supp. 437 (S.D. Fla. 1995).

But Plaintiffs are of the mistaken view that it is. The amended complaint alleges that Wassgren counseled EquiAlt about federal and state securities laws and drafted offering materials in connection with their investment Funds. Doc. 13, ¶¶ 36, 37, 40-41. Wassgren also prepared articles of organization and registration documents for EquiAlt and limited liability companies that held the real properties connected with the Funds. *Id.* ¶ 40-42.

These allegations, however, boil down to the assertion that Wassgren did what an ordinary lawyer would do for a client. Merely drafting legal documents and providing other routine legal services, as Wassgren did here, does not amount to advancing any fraud EquiAlt and its principals may have perpetrated. *See Schatz v. Rosenberg*, 943 F.2d 485, 497 (4th Cir. 1991) (lawyer does

not aid and abet fraud by merely drafting documents; otherwise, attorneys would be "co-guarantors and co-signatories, along with their clients," of "every statement and agreement" in documents they prepare).

Nor is there any causal connection between Wassgren's furnishing of customary, transactional legal services to EquiAlt and the Plaintiffs' claimed injuries. For instance, Plaintiffs fail to reasonably explain how Wassgren's drafting of offering materials in 2011 for Fund I, or in 2013 for Fund II, caused the Plaintiffs' injuries when the SEC's position is that EquiAlt *became* a Ponzi scheme five years later in 2016. *See Exhibit A*, at 14, 16, and 48. Beyond the temporal gap, there is a substantive disconnect and failure on Plaintiffs' part to explain the nexus between Wassgren's activities as outside counsel and Plaintiffs' purported harm. *El Camino Res. Ltd. v. Huntington Nat. Bank,* 722 F. Supp. 2d 875, 911 (W.D. Mich. 2010) ("[S]ubstantial assistance means something more than merely providing routine professional services that aid the tortfeasor in remaining in business, but do not proximately cause the plaintiffs' harm.").

**Category 2: Misrepresentations/Omissions in the Offering Materials.** The second category of allegations center on the offering materials Wassgren drafted. Plaintiffs' issues with these materials can be distilled into two subcategories—alleged misrepresentations and omissions.

For example, Plaintiffs allege the PPMs contain various misrepresentations of fact. Doc. 13 ¶¶ 40-41, 43-44, 47. Strangely, the false representations Plaintiffs accuse Wassgren of making in the PPMs include correct statements of the law. *Id*. ¶ 43. If followed by EquiAlt, Wassgren's advice would have resulted in a valid exemption under Reg D. For example, the PPMs represented the following:

● "This Offering is being made pursuant to the private offering exemption of Section 4(2)[8] of the [Securities] Act and/or Regulation D promulgated under the Act[.]"Doc. 13, ¶ 43.

---

[8] In 2012, Section 4(2) was renumbered as Section 4(a)(2). *See* PL 112-106, April 5, 2012, 126 Stat. 306.

● "This Offering is also being made in strict compliance with the applicable state securities laws[.]" *Id*.

● "Under no circumstances will the Company admit more than thirty-five (35) non-accredited Investors as computed under Rule 501 of Regulation D promulgated under the [Securities] Act[.]" *Id*.

● "The Company may utilize the services of one or more registered broker/dealers" to sell the unregistered securities[.]*" Id.*

Notably, these representations in the PPMs are deemed to be "false and misleading" ***only*** because EquiAlt's promoters failed to comply with them. Indeed, if EquiAlt and its principals had followed Wassgren's advice, there would have been no deceit, no fraud, and no Ponzi scheme. Ultimately, it is the client's decision what to do with their attorney's advice. The law is settled, however, that "an attorney is not liable for . . . the acts of his clients[,]" whatever that client's decision might be. *See Hicks v. Lewis,* 904 F. Supp. 1368, 1370 (M.D. Fla. 1995); *see also Pickard v. Maritime Holding Corp.*, 161 So. 2d 239, 241 (Fla. 3d DCA 1964) ("[A]n attorney acting under employment, at the direction of his client and in legal manner is not liable for the consequences of his client's actions"). The same principle applies here.

Setting aside what EquiAlt did or did not do with Wassgren's advice, any misrepresentations in the PPMs or other offering materials land at EquiAlt's doorstep. In the securities context, "[o]ne who prepares or publishes a statement on behalf of another is not its maker" for purposes of imposing liability. *Janus Capital Group, Inc. v. First Derivative Traders,* 131 S. Ct. 2296, 2302 (2011). As the Supreme Court explained in *Janus*, "in the ordinary case, attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by—and only by—the party to whom it is attributed." *Id*. The Court stressed that "the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Id*. In this context, the maker of a

statement is the client (*i.e.,* EquiAlt), not the scrivener (*i.e.,* Wassgren) who wrote it down, or copied and pasted it into a document.

Moreover, assuming *arguendo* that the PPMs contain misrepresentations, the amended complaint nowhere attributes those misrepresentations to Wassgren, as opposed to EquiAlt. An attorney is, and should be, permitted to obtain information from a client and retransmit that information without fear of automatic liability if that information turns out to be inaccurate. Accordingly, the attorney's unknowing transmission of a client's misrepresentation does not transform that statement into an attorney misrepresentation. *See Schatz*, 943 F.2d at 495 & 497 ("[L]awyers do not vouch for the probity of their clients when they draft documents reflecting their clients' promises, statements, or warranties"); *see Friedman v. Arizona World Nurseries*, 730 F. Supp. 521, 533 (S.D.N.Y. 1990) (determining that a complaint against a law firm that drafted an offering memorandum, legal opinion, and a tax assistance letter should be dismissed because the lawyer "cannot be held responsible for the general statements in the offering memorandum not specifically attributed to" him; only the legal opinion and tax assistance letter could create liability). Under *Schatz* and the other authorities cited above, Wassgren cannot be held responsible for statements that EquiAlt made in the PPMs. *See Iqbal*, 556 U.S. at 678 (claim fails to satisfy plausibility when it makes allegations that are "merely consistent with" liability).

Similarly, Plaintiffs illogically try to hold Wassgren responsible for not being able to predict how EquiAlt would operate once established. Plaintiffs allege that EquiAlt's operations didn't start out as a Ponzi scheme, it became one. Doc. 13, ¶ 30. Nonetheless, Plaintiffs allege that the PPMs Wassgren prepared contain material omissions because they:

● omitted to disclose that millions of dollars "*would be* used" to pay undisclosed fees and bonuses to EquiAlt and its principals. Doc. 13, ¶ 43.

● omitted to disclose that EquiAlt "*would* pocket discount fees" rather than passing on to the Funds purported savings from listed sale prices. *Id*.

● omitted to disclose that monies "*would be* transferred" from one Fund to another to pay interest due to investors. *Id*.

● failed to disclose that commissions would be paid to unlicensed sales agents. *Id*.

Wassgren is an attorney, not an oracle. But Plaintiffs' theory presumes counterfactually that Wassgren could predict that EquiAlt *would* in the future fail to comply with the correct legal advice that he provided. The law does not require such clairvoyance. *Cf. Bullock v. Carver,* 297 F.3d 1036, 1052 (10th Cir. 2002) ("clairvoyance is not a required attribute of effective representation"). If an attorney is not expected to predict the future decisions of courts, *see Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co.,* 894 F. Supp. 777, 788 (D. Vt. 1995) ("An attorney cannot be expected to predict the actions that a court will take in the future"), it follows that an attorney should not be expected to predict the future behavior of his or her client. *See United States v. Kellogg,* 2010 WL 6446081, at *22 (E.D. Ky. Dec. 27, 2010), *report and recommendation adopted,* 2011 WL 1326012 (E.D. Ky. Apr. 7, 2011) ("An attorney, in the exercise of reasonable professional judgment, simply cannot be expected to be a psychic or fortune teller."); *United States v. Jones,* 2010 WL 2679964, at *6 (E.D. Wis. July 2, 2010) ("It is not reasonable to expect attorneys to be prescient in predicting changes in the law, by consulting a crystal ball or reading tea leaves."). These allegations fail *Twombly*'s plausibility standard.

Paragraph 44 illustrates Plaintiffs' inability or refusal to distinguish between how EquiAlt was structured (by Wassgren) and how it was operated (by Davison and Rybicki). Plaintiffs argue that the PPMs contained "half-truths." Doc. 13, ¶ 44. On the half-truth side, the PPMs disclosed that Davison and Rybicki would be compensated through management fees and undefined "substantial compensation and benefits." *Id*. On the half-false side of the ledger, Plaintiffs claim the PPMs falsely assured prospective investors that EquiAlt "does not anticipate significant operating costs" and failed to disclose that Davison and Rybicki would strip the EquiAlt Funds of

substantial capital, thereby rendering the Funds insolvent and incapable of paying investors. *Id*. Essentially, the half-true portion consists of representations regarding how the Funds were set up to operate at the time Wassgren drafted the offering materials, and the half-false portion is how Davison and Rybicki operated the Funds once established. These "half-truth" allegations merely reflect that Wassgren advised EquiAlt to do one thing, and EquiAlt apparently went off and did another. This plainly is insufficient to state a claim against Wassgren.

Plaintiffs' allegations also reflect a fundamental misunderstanding of the attorney-client relationship. "A client is not required to heed all of her attorney's advice but may disregard it and suffer the consequences." *See, e.g., Silva v. Potter*, 2006 WL 3298543, at *5 (M.D. Fla. Sept. 25, 2006). The consequences for failing to heed legal advice fall on the client, however, not the attorney. It would be an unreasonable extension of aiding and abetting law for the Court to conclude that a lawyer must know and anticipate that the client will disregard his legal advice.

**Category 3: Communications with EquiAlt Sales Agents/Investors.** The third category of fraud-based allegations involve claims that Wassgren had communications with the sales agents who sold the Funds and the persons who invested in those Funds. These allegations suffer from the same defects—vagueness and lack of particularity. For instance, paragraph 46 alleges that Wassgren "prepared false and misleading marketing materials distributed to prospective investors." Doc. 13 ¶ 46; Doc. 13-2, Exs. G, H, K, and L. Plaintiffs' assertions are based entirely on the fact that some of the marketing materials contain Wassgren's name and law office. *Id*. The fact that a sales agent put Wassgren's name and law office in a PowerPoint presentation or in a brochure does not lead to the inescapable conclusion that Wassgren had a hand in drafting this presentation or brochure. Placing a person's name on one page of a marketing brochure is not the equivalent of that person placing his imprimatur on the content of that brochure. This is especially

true when, in the case of Exhibits G, H, K, and L, these materials state only that Wassgren is EquiAlt's attorney – which is a true statement. Plaintiffs nowhere allege how Wassgren knew the contents of the marketing materials, much less that any of the contents were false or misleading.

Plaintiffs' allegations regarding Wassgren's purported drafting of the Finder's Fee Agreement for EquiAlt's sales agents, and his intentions in crafting certain portions of that agreement, demand multiple levels of speculation and suspension of disbelief. *See Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008) (A court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."); Doc. 13-2, Ex. I. The reference to Wassgren's name in the "Notice" section of this agreement is innocuous. All it does is direct the parties to send "any notice required or permitted to be given under this Agreement" to "the Company" with a copy to Wassgren as counsel for the company. *Id.* This does not mean that Wassgren received the agreement or any notice required under the agreement. Plaintiffs merely assume this happened.

To coat this allegation with a layer of mischief, Plaintiffs bizarrely accuse Wassgren of including an indemnification provision in the Finder's Fee Agreement to protect "both the EquiAlt fund and the [sales] agent[s] against losses incurred by either of them arising from the Consultant's failure to register as a broker-dealer . . . ." Doc. 13, ¶ 50. But this allegation is based on a blatant misreading of the actual provision. It would be impossible for the two parties to this indemnification provision—EquiAlt and the sales agent—to indemnify each other. *See Int'l Fid. Ins. Co. v. Americaribe-Moriarty JV,* 906 F.3d 1329, 1336-37 (11th Cir. 2018) (recognizing that "a contract for indemnity is an agreement by which the promisor agrees to protect the promisee against loss or damages by reason of liability to a third party"); *MVW Mgt., LLC v. Regalia Beach Developers LLC,* 230 So. 3d 108, 112-13 (Fla. 3d DCA 2017) (noting indemnification provisions

that function as an exculpatory provision "will not be inferred" under Florida law). Rather, pursuant to this agreement, the sales agent agrees to indemnify EquiAlt for losses caused by the sales agent's failure to register as a broker dealer. Doc. 13-2, Ex. I, at 115. This is precisely the type of allegation that Rule 9(b) is designed to torpedo.

The allegations regarding Wassgren's interactions with sales agents similarly fail to support Plaintiffs' aiding and abetting fraud claim. Plaintiffs baldly assert that Wassgren provided guidance to many of the sales agents who sold EquiAlt securities. Doc. 13 ¶ 55. Yet, they only provide two examples of what supposedly was a common occurrence, and those two examples confuse more than they clarify. For instance, Plaintiffs claim that Wassgren told sales agent Dale Tenhulzen that he did not need a license to legally sell EquiAlt's securities. *Id*. Contrary to the requirements of Rule 9(b), they fail to explain when, where, and how this communication occurred. *Garfield*, 466 F.3d at 1262 (Rule 9(b) requires plaintiffs to explain "the who, what, when, where, and how" of the purported fraud). Setting that deficiency aside, and to make matters less clear, in the next paragraph Plaintiffs claim that Wassgren told a different sales agent, John Friedrichsen, that in fact a sales agent needed to acquire his "Series 7 license to sell debentures for the REIT Fund." *Id*. ¶ 56. Wassgren's statement to Freidrichsen was legally correct, far from providing substantial assistance in perpetrating a fraud. But given the contradictory nature of these two communications, both cannot be in furtherance of, or substantially assisting, any fraud.

The remaining allegations pertaining to the sales agents generally focus on assurances Wassgren purportedly gave them regarding the lawfulness of selling EquiAlt's securities. This advice, if given, also was correct. As the PPM explained, "[u]nder no circumstances will the Company[, EquiAlt Fund, LLC,] admit more than thirty-five (35) non-accredited Investors as computed under Rule 501 of Regulation D promulgated under the Act." Doc. 13-1, Ex. E, at 385.

This is a correct statement of the law. *See* 17 C.F.R. § 230.506(b)(2)(i). The "Prospective Purchaser Questionnaire," included in the package of offering materials the sales agents had access to and provided to investors, explained the meaning of the term "accredited investor." Doc. 13-2, Ex. F, at 75, 78. This definition, likewise, is consistent with the law. *See* 17 C.F.R. § 230.501(a). Had the sales agents and EquiAlt paid attention to the correct statements of the law in the offering materials, they would not have run afoul of any securities laws. In short, Plaintiffs do not explain how Wassgren's conduct vis-à-vis the sales agents constitutes "substantial assistance" in any fraud.

All of the allegations in this third category of aiding and abetting allegations claims also is subject to dismissal because Plaintiffs have not alleged a direct relationship between Wassgren's purported actions and their alleged injuries. As noted, the substantial assistance element requires a showing of proximate cause. *Mosier v. Stonefield Josephson, Inc.,* 815 F.3d 1161, 1167–68 (9th Cir. 2016) ("causation is an essential element of an aiding and abetting claim [in California], *i.e.*, plaintiff must show that the aider and abettor provided assistance that was a *substantial factor in causing* the harm suffered") (emphasis added). Here, the amended complaint fails to reveal any nexus between Wassgren's purported communications with the sales agents and Plaintiffs' injuries. Nor does it connect his supposed preparation of marketing materials with any injury to Plaintiffs. This, of course, is because Plaintiffs' injuries, if any, resulted from EquiAlt's Ponzi scheme activity, not anything that Wassgren did or said. And if the sales agents made any misrepresentations to investors, these misrepresentations would be a superseding cause of Plaintiffs' injuries.

### B. The Amended Complaint Fails To Allege that Wassgren Had Actual Knowledge of the Underlying Fraud Violation.

Plaintiffs assume Wassgren had actual knowledge of EquiAlt's alleged fraud, but they fail to plead any specific facts supporting that assumption. *See Lawrence*, 455 F. App'x at 907; *Broad-*

*Bussell Family L.P. v. Bayou Grp. LLC (In re Bayou Hedge Funds Invest. Litig.),* 472 F. Supp. 2d 528, 533 (S.D.N.Y. 2007) ("allegations that attorneys represented defrauders in certain transactions do not give rise to any inference that the attorneys were aware of the fraud."). To plead "actual knowledge," Plaintiffs are required to do more than just strategically sprinkle the words "knowing," "knowingly," and "knowledge" throughout their amended complaint. "Actual knowledge" of the underlying fraud must be shown. *IIG Wireless,* 22 Cal. App. 5th at 654 ("[L]iability for aiding and abetting depends on proof the defendant had actual knowledge of the specific primary wrong the defendant substantially assisted."); *cf. Lamm v. State St. Bank & Tr.,* 749 F.3d 938, 950 (11th Cir. 2014) (citing *Platinum Estates, Inc. v. TD Bank, N.A.,* 2012 WL 760791, at *3 (S.D. Fla. Mar. 8, 2012) ("In cases where a bank customer has perpetrated a fraudulent scheme, courts have widely held that the bank is not liable for aiding and abetting unless the bank has actual knowledge of its customer's wrongful activity."); *Groom v. Bank of America,* 2012 WL 50250, at *2–3 (M.D. Fla. Jan. 9, 2012).

Plaintiffs have not even alleged that there were clear "red flags" that Wassgren should have recognized, but even if Plaintiffs could allege such "red flags," it would be insufficient to plead "actual knowledge." *Lamm,* 749 F.3d at 950 (explaining that what the defendant "should have known," "red flags," and "atypical activities" are insufficient to establish the knowledge requirement for aiding and abetting fraud or breach of fiduciary duty claims); *Cordell,* 2012 WL 13148744, at *5 ("Red flags, or aroused suspicions, do not constitute actual awareness."). Thus, even in a case involving a Ponzi scheme, the provision of routine services – and even the failure to investigate transactions – does not satisfy this "actual knowledge" standard. *Lawrence*, 455 F. App'x at 907; *Wiand*, 938 F. Supp. 2d at 1244. Neither will allegations that an alleged aider and abettor was reckless or negligent. *Wiand*, 938 F. Supp. 2d at 1244-47. Just as banks have the "right

20

to assume that individuals who have the legal authority to handle the entity's accounts do not misuse the entity's funds," *O'Halloran v. First Union Nat'l Bank of Fla.*, 350 F.3d 1197, 1205 (11th Cir. 2003), the same is true with respect to an attorney and the expectation that his client will follow his advice.

*Wiand* illustrates the demanding nature of this "actual knowledge" standard. There, the same receiver appointed to operate EquiAlt alleged that an individual orchestrated a massive Ponzi scheme for ten years that raised in excess of $350 million from unwitting investors. 938 F. Supp. 2d at 1242. The receiver sued the bank that held the funds for aiding and abetting the perpetrator's fraud. *Id*. He alleged that the bank had "actual knowledge" of the scheme because the perpetrator opened accounts even though he lacked authority to act on behalf of the two funds named in the accounts, the account opening paperwork was inaccurate, the account reflected "unusual trends [and] patterns of transfers," the bank received reports alerting them to over 200 transactions valued over $25,000, and the transactions triggered the bank's fraud alert system. *Id*. at 1245–46. The district court ruled that these allegations *failed* to "state a claim for aiding and abetting liability because the receiver alleged no more than 'red flags.'" *Id*. at 1246. Red flags, the court held, are insufficient as a matter of law to establish "actual knowledge." *Id*. at 1244–46.

Particularly when, as here, the complaint fails to allege the existence of an independent duty on the part of Wassgren, the standard for "actual knowledge" is high. Allegations that the defendant "should have known" of the primary violator's fraud or breach of fiduciary duty are insufficient. *Lamm*, 749 F.3d at 950. There must be a "high conscious intent" and a "conscious and specific motivation" to aid the fraud. *Court Appointed Receiver of Lancer Offshore v. Citgo Group, Ltd.,* 2008 WL 926513, at *6 (S.D. Fla. Mar. 31, 2008). The amended complaint provides no factual support for the conclusory allegations that Wassgren knew about EquiAlt's Ponzi

scheme. *See Tai-Si Kim v. Kearney*, 2010 WL 3433130, at *9 (D. Nev. Aug. 30, 2010) (granting motion to dismiss conclusory allegations that title company aided and abetted fraud). It does not allege that Davison and Rybicki revealed their purportedly unlawful plans to Wassgren. *See also Dawson v. Withycombe,* 216 Ariz. 84, 103 (Ct. App. 2007) (defendants entitled to judgment as a matter of law under Arizona law on aiding and abetting fraud claim where plaintiffs could only prove that defendants were aware of alleged perpetrators' poor financial condition and dishonest character, but not fraudulent scheme itself). And there are no allegations that Wassgren had access to EquiAlt's bank accounts or reviewed monthly financial statements. Basically, there is nothing to establish *actual* knowledge of fraud on Wassgren's part.

Nor do the conclusory allegations that Wassgren knew of the Ponzi scheme satisfy *Twombly's* plausibility standard since revealing to Wassgren any plan to engage in a Ponzi scheme would have been a huge gamble. Most people won't risk their careers or the legal consequences for helping someone violate the law. And those who do, often want something extra for their trouble. The amended complaint does not allege that EquiAlt paid Wassgren and the firms any amounts beyond their standard fees, which they charged other clients. While Davison and Rybicki supposedly engaged in a Ponzi scheme to make millions of dollars, fly around in private jets, and drive around in fancy cars, *see* SEC Action, Doc. 138, ¶ 52, apparently Plaintiffs would have this Court believe that Wassgren and the firms risked everything for nothing more than their standard fees. *See Dileo,* 901 F.2d at 629 (affirming dismissal of case based, in part, on the fact that "the complaint [did] not allege that [E&Y] had anything to gain from any fraud"). Plaintiffs' claims lack plausibility. *See Iqbal*, 556 U.S. at 678.

For the foregoing reasons, Counts 1, 6, 12, 17, 18, and 21 should be dismissed.

### C.    <u>Count 18 Should Be Dismissed as a Matter of Law</u>.

Count 18 alleges that Wassgren aided and abetted an intentional misrepresentation in contravention of Colorado Law. Colorado, however, does not recognize a separate cause of action for aiding and abetting intentional misrepresentation as alleged in Count 18. *Medved v. DeAtley,* 2013 WL 4873054, at *9 (D. Colo. Sept. 11, 2013). In addition to the reasons stated above, Count 18 should be dismissed as a matter of law.

## II.    COUNTS 2, 5, 13, 16, AND 20 FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY SHOULD BE DISMISSED.

Counts 2 (Florida), 5 (California), 13 (Arizona), 16 (Colorado), and 20 (Nevada) for aiding and abetting breach of fiduciary duty fail to state a claim under Rule 12(b)(6) or satisfy the heightened pleading requirement of Rule 9(b). *See DeBlasio v. Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 2008 WL 2594819, at *8 (S.D.N.Y. June 26, 2008) (applying Rule 9(b) to breach of fiduciary duty claims "based on plaintiffs' allegations of Defendant's fraudulent conduct"). These claims should be dismissed.

Again, although the specific elements in a given state may vary, a cause of action for aiding and abetting breach of fiduciary duty requires, at a minimum: (1) a fiduciary duty on the part of a primary wrongdoer; (2) a breach of that fiduciary duty; (3) **knowledge** of the breach by the alleged aider and abettor; and (4) **substantial assistance** or encouragement of the wrongdoing by the aider and abettor. *Turnberry Vill. N. Tower Condo. Ass'n, Inc. v. Turnberry Vill. S. Tower Condo. Ass'n, Inc.,* 224 So. 3d 266, 267 (Fla. 3d DCA 2017); *Nasrawi v. Buck Consultants LLC,* 231 Cal. App. 4th 328, 343 (Cal. Ct. App. 2014); *Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund,* 201 Ariz. 474, 485 (2002); *Mandelbaum v. Fiserv, Inc.,* 787 F. Supp. 2d 1226, 1242 (D. Colo. 2011); *Guilfoyle v. Olde Monmouth Stock Transfer Co.,* 130 Nev. 801, 812–13 (2014). Proper pleading is lacking here with respect to each element.

A.      **Plaintiffs Fail To Adequately Describe A Fiduciary Relationship.**

Counts 2, 5, 13, 16, and 20 should be dismissed because Plaintiffs have failed to adequately allege facts supporting the existence of a fiduciary relationship between the sales agents and themselves (the investors). In fact, the law on what constitutes a fiduciary duty varies from state to state. For instance, in Florida, a fiduciary obligation may be either express or implied. *Arbitrajes Finacnieros, S.A. v. Bank of Am., N.A.,* 605 F. App'x 820, 823 (11th Cir. 2015). Irrespective of these differences, nowhere do Plaintiffs allege the existence of an express fiduciary relationship between themselves and the persons who supposedly breached that duty—the sales agents.

Nor do Plaintiffs allege, other than in conclusory terms, an implied fiduciary relationship with the sales agents. An implied fiduciary duty is "premised upon the specific factual situation surrounding the transaction and the relationship of the parties," and exists "where confidence is reposed by one party and a trust accepted by the other." *In re Palm Beach Fin. Partners,* 488 B.R. 758, 781 (Bankr. S.D. Fla. 2013). Plaintiffs must allege "some dependency by one party and some undertaking by the other party to advise, counsel, and protect the weaker party." *Lanz v. Resolution Trust Corp.,* 764 F. Supp. 176, 179 (S.D. Fla. 1991); *Flores v. Gain Capital Grp., LLC,* 2018 WL 6133644, at *6 (C.D. Cal. June 20, 2018) (scope of fiduciary duty depends on "facts of each case" and "mere facilitator" of investment transactions not subject to fiduciary duty to customers). Typically, no fiduciary relationship exists between defrauded investors and third parties who contracted with the perpetrators. *E.g., Lanz,* 764 F. Supp. at 179 (in arms-length transaction, no duty imposed on either party to act for benefit of other party); *Eurycleia Partners, LP v. Seward & Kissel, LLP,* 910 N.E. 2d 976, 980 (N.Y. 2009) (fiduciary duties owed by attorney to limited partnership do not extend to limited partners, even where attorney drafts offering memorandum purportedly relied on by limited partners); *Gould v. Mellick & Sexton,* 819 A.2d 216, 218, 224 (Conn. 2003) (affirming dismissal of complaint of limited partnership interest purchasers against

attorney for limited partnership because attorney owed no duty to investors even though he drafted PPM, summaries of offering, tax opinion, securities compliance opinion and escrow agreement).

Here, the amended complaint is imprecise in how it describes the relationship between the sales agents and the investors. It merely asserts that Plaintiffs purchased the securities from "unlicensed sales agents" who had "existing clients with whom they had pre-existing confidential fiduciary relationships of trust and confidence." Doc. 13, ¶¶ 29, 32, 33. The complaint further fails to explain how EquiAlt and the financial advisors "gained the trust and confidence from the Plaintiffs." *Id*. ¶ 124. In fact, Plaintiffs studiously avoid being pinned down to describing any specific relationship between the sales agents and themselves. They confusingly and variously refer to the sales agents as "unlicensed sales agents," Doc. 13 ¶¶ 31-33, unlicensed insurance producers and financial advisors, *id*. ¶ 34, and "unlicensed dealers," *id*. ¶ 49. But the mere labeling of these agents as "fiduciaries" "will not do," *Twombly*, 550 U.S. at 555. Nor does the conclusory allegation that the agents "acted as de facto investment advisors or brokers or financial advisors." Doc. 13 ¶ 119.

The Court should dismiss Count 20 for a Nevada-specific reason. As one Nevada court recently recognized, "Nevada did not recognize that an investment adviser owed his client a fiduciary duty until 2017." *Landow v. Bartlett,* 2019 WL 8064074, at *2 (D. Nev. Nov. 18, 2019). Because the transactions in that case occurred prior to 2017, the court found that a fiduciary relationship did not exist between the plaintiff-investors and the defendants who were alleged to have misled the plaintiff into purchasing high-commission, high-fee, high-risk, direct-participation-program, and private-placement securities. *Id*. at *1. Thus, Count 20 should be dismissed with respect to all underlying transactions that took place prior to July 1, 2017.

**B.**     **Plaintiffs Fail To Allege Substantial Assistance and Actual Knowledge.**

A claim of aiding and abetting breach of fiduciary duty requires a plaintiff to plead substantial assistance to and actual knowledge of *another person's* breach of a fiduciary duty. *See Turnberry Vill. N. Tower Condo. Ass'n*, 224 So. 3d at 267 (Florida); *IIG Wireless, Inc. v. Yi*, 22 Cal. App. 5th 630, 654, 231 Cal. Rptr. 3d 771, 794 (2018) (California); *Wells Fargo Bank*, 201 Ariz. at 485 (2002) (Arizona); *Sender*, 423 F. Supp. 2d at 1176 (Colorado);[9] *Guilfoyle*, 130 Nev. at 813 (Nevada). The knowledge requirement for aiding and abetting is not satisfied by reckless or negligent conduct. *Sender v. Mann*, 423 F. Supp. 2d 1155, 1175–76 (D. Colo. 2006). Because of the similarities between aiding and abetting breach of fiduciary duty and aiding and abetting fraud, both causes of action are commonly analyzed together. *See, e.g., Wiand*, 938 F. Supp. 2d at 1244 (analyzing aiding and abetting fraud and breach of fiduciary duty claims together). Accordingly, the deficiencies in Plaintiffs' fraud allegations—in terms of establishing substantial assistance and actual knowledge—apply equally here.

Plaintiffs utterly fail to plead actual knowledge here. From his office in Nevada or Los Angeles, Wassgren was not well-positioned to know precisely what was going on inside the walls of EquiAlt in Tampa, Florida. Transactional attorneys, like Wassgren, are not required to monitor the internal operations of their clients. Even "red flags" in EquiAlt's operations (which Plaintiffs have not even alleged), would not rise to the level of "actual knowledge" for purposes of establishing secondary liability for any breach of fiduciary duty. *See Greenfield Plaza Inv'rs LLC v. Stearns Bank N.A.*, 2012 WL 13024089, at *10 - 11 (D. Ariz. Aug. 14, 2012) (bank's awareness

---

[9] At least one Colorado court has stated that the law is unsettled as to whether actual knowledge or constructive knowledge is required for aiding and abetting a breach of fiduciary duty. *Alvarez LLC v. Blazar Tech. Sols., LLC*, 2019 WL 3205952, at *2 (D. Colo. July 16, 2019) (citing *Holmes v. Young*, 885 P.2d 305, 308 (Colo. Ct. App. 1994) (noting that the standard for knowledge is "unsettled under Colorado law"). Nonetheless, Colorado courts, including the court that noted the lack of settled law, applied an actual knowledge standard. *See id.*

of "unusual, unprecedented and unexplained levels of activity" in the perpetrator's account constituted "red flags," but this suspicious activity did not rise to the level of knowledge required for aiding and abetting breach of fiduciary duty); *Sender*, 423 F. Supp. 2d at 1176 (finding lawyers' knowledge that their clients used promissory notes and LLPs to raise money for their company did not demonstrate knowledge that these activities were fraudulent). With only conclusory allegations of actual knowledge, the amended complaint falls short.

Plaintiffs' substantial assistance claims do not fare any better. First, it would have been difficult, if not impossible, for Wassgren to substantially assist a sales agent with whom he had never communicated in violating a fiduciary duty to an investor whom Wassgren had never met, communicated with, or even knew existed. Second, drafting offering documents that accurately state the law regarding the sale of securities exempt from registration under Reg D is not the type of conduct that rises to the level of substantial assistance. And, third, without participating in the marketing presentations of the sales agents or other promotional activities, Wassgren cannot be said to have aided and abetted these sales agents in communicating any false representations regarding the debentures. For these reasons, and more stated *supra* in Section I, Counts 2, 5, 13, 16, and 20 for aiding and abetting breach of fiduciary duty should be dismissed.

## III.    COUNT 3 FOR FLORIDA CIVIL CONSPIRACY SHOULD BE DISMISSED.

The civil conspiracy count collapses as a result of Plaintiffs' failure to establish a viable claim of aiding and abetting fraud or breach of fiduciary duty under Counts 1 and 2. Under Florida common law, "[t]he elements of a civil conspiracy are: (a) a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts performed pursuant to the conspiracy." *Walters v. Blankenship,* 931 So. 2d 137, 140 (Fla. 5th DCA 2006). Civil conspiracy, in Florida, is *not* an independent cause of action; rather, the plaintiff must

allege an underlying illegal act or tort. *Alhassid v. Bank of Am., N.A.,* 60 F. Supp. 3d 1302, 1316-17 (S.D. Fla. 2014); *Palm Beach Fin.,* 488 B.R. at 777 (collecting cases). Thus, because the underlying Florida claims set forth in Counts 1 and 2 are subject to dismissal, so is Count 3.

Even if Counts 1 and 2 survive scrutiny (which they should not), Plaintiffs fail to plausibly allege facts to support their civil conspiracy claim. General allegations of conspiracy are inadequate. "A complaint must 'set forth *clear, positive, and specific* allegations of civil conspiracy,'" *Eagletech Commc'ns, Inc. v. Bryn Mawr Inv. Grp., Inc.,* 79 So. 3d 855, 863 (Fla. 4th DCA 2012), and facts that are more than vague or conclusory. *Alhassid v. Bank of Am., N.A.,* 60 F. Supp. 3d 1302, 1320 (S.D. Fla. 2014) (quoting *Fullman v. Graddick,* 739 F.2d 553, 556 (11th Cir. 1984)) ("In conspiracy cases, a defendant must be informed of the nature of the conspiracy which is alleged. It is not enough to simply aver in the complaint that a conspiracy existed. A complaint may justifiably be dismissed because of the conclusory vague and general nature of the allegations of conspiracy.").

Count 3 fails to allege any facts demonstrating an agreement between Wassgren and EquiAlt or Wassgren and the sales agents to commit specific acts in furtherance of the alleged conspiracy. Plaintiffs instead allege only that Wassgren agreed with EquiAlt's CEO "to create various private placements and raise money for EquiAlt" Doc. 13 ¶ 164. As discussed above, however, an agreement to provide ordinary legal services does not a conspiracy make. Although Plaintiffs go on to assert that defendants engaged in a "conspiracy" by "stepping outside of their normal roles as attorneys providing routine legal advice," Doc. 13 ¶ 166, *see also id.* ¶¶ 167-169 (repeating the allegations of the aiding and abetting claims and adding the label of "conspiracy" to them), as already discussed, these allegations do not provide the necessary *facts* to support

Plaintiffs' claims for aiding and abetting fraud and breach of fiduciary duty. Accordingly, the amended complaint fails to establish the existence of a civil conspiracy.

Count 3 should also be dismissed under the intracorporate conspiracy doctrine. Under this doctrine, the "acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy." *Kirwin v. Price Communications Corp.,* 391 F.3d 1323, 1326 (11th Cir. 2004); *see also HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.,* 302 F. Supp. 3d 1319, 1325 (M.D. Fla. 2016), *aff'd,* 703 F. App'x 814 (11th Cir. 2017) ("the actions of corporate agents, acting within the scope of their employment, are attributed to the corporation itself, thereby negating the multiplicity of actors needed for a conspiracy."). Simply put, "[a] corporation cannot conspire with its own agents or employees when they are acting within the scope of their employment." *McAndrew v. Lockheed Martin Corp.,* 206 F.3d 1031, 1036 (11th Cir. 2000). Florida courts apply this doctrine to attorneys for the corporation. *Dickerson v. Alachua County Comm'n,* 200 F.3d 761, 767 (11th Cir. 2000); *see also Am. Credit Card Tel. Co. v. Nat'l Pay Tel. Corp.,* 504 So. 2d 486, 488 (Fla. 1st DCA 1987); *Lipsig v. Ramlawi,* 760 So. 2d 170, 181 (Fla. 3d DCA 2000).

An exception exists where the agent has a "personal stake" in the activities that is separate and distinct from the corporation's interest. *Dickerson,* 200 F.3d at 767. But this exception does not apply when an attorney acts within the scope of his representation. *Farese v. Scherer,* 342 F.3d 1223, 1230-31 (11th Cir. 2003); *Hefferman v. Hunter,* 189 F.3d 405, 411 (3d Cir. 1999) ("no conspiracy can exist where an attorney's advice or advocacy is for the benefit of his client rather than for the attorney's sole personal benefit"). Here, Plaintiffs have not alleged any facts showing that Wassgren had a personal stake in the activities that were separate and distinct from EquiAlt's interests. *See O'Boyle v. Sweetaple,* 2015 WL 13574304, at *6-8 (S.D. Fla. June 4, 2015) (applying

*Farese* and *Heffernan* to dismiss Florida civil conspiracy claim against attorney because complaint did not allege attorney acted for own personal benefit). Because Wassgren cannot conspire with EquiAlt, Count 3 should be dismissed.

## IV.   PLAINTIFFS' CLAIMS UNDER STATE SECURITIES LAWS FAIL.

In Counts 4, 9-11, 14-15, and 19, Plaintiffs allege causes of action that Wassgren violated Arizona, Colorado, Nevada, and California state securities laws. These claims should be dismissed for the reasons stated in DLA's and Fox's respective motions to dismiss. *See* Docs. 61 and 62. For sake of efficiency, Wassgren hereby adopts all of the arguments made by DLA and Fox justifying the dismissal of Counts 4, 9-11, 14-15, and 19 in the amended complaint, and submits their arguments as his own.

Further, as described in detail in Fox's motion to dismiss, Doc. 62 at 35, and adopted by Wassgren by reference herein, all registration claims in the amended complaint brought under California, Arizona, Colorado, and Nevada law are preempted by the National Securities Markets Improvement Act of 1996, 15 U.S.C. § 77r, and, therefore, should be dismissed.

## V.   STATUTES OF REPOSE

For the reasons stated in the motion to dismiss filed by Fox, any claims and causes of action brought against Wassgren under Counts 4, 9, 14, 15, and 19 are subject to dismissal based on the applicable statutes of repose. Doc. 62, at 28 - 32. For instance, Count 4 for alleged violations of California Corporate Code §§ 25401, 25501, 25110, 25503, and/or 25504.1 are subject to dismissal based on the applicable statutes of repose. Cal. Corp. Code §§ 25506, 25507. Any claims and causes of action brought against Wassgren under Count 9 for alleged violations of §§ 44-1841, 44-1842, 44-2001(A), and/or 44-2003(A) of the Arizona Securities Act are subject to dismissal based on the applicable statutes of repose. Az. Sec. Act § 44-2004(A). Any claims and causes of action brought against Wassgren under Counts 14 and 15 for alleged violations of C.R.S. §§ 11-41-501,

11-51-301, 11-51-604(1), (3), (4), and/or (5) are subject to dismissal based on the applicable statutes of repose. C.R.S. §§ 11-51-604(1), 11-51-604(8). Any claims and causes of action brought against Wassgren under Count 19 for alleged violations of §§ 90.301, 90.460, 90.570, and/or 90.660 of the Nevada Securities Act are subject to dismissal based on the applicable statutes of repose. Nev. Sec. Act § 90.670. Wassgren adopts all of the arguments made by Fox in its motion to dismiss with respect to these claims and submits them as his own.

## VI.   PLAINTIFFS' CALIFORNIA UNFAIR COMPETITION CLAIM FAILS.

Count 8, which cites to California's Unfair Competition Law ("UCL"), is the personification of conclusory pleading. Paragraph 205 offers a prime example – "Defendants' *conduct as alleged above* constitutes unlawful competition in that, *for the reasons set forth above*, said acts and practices violate the Corporations Code." Doc. 13 ¶ 205 (emphasis added). This tells Wassgren nothing. The rest of Count 8 is not more illuminating. The allegations in this count seem more designed to check a box by using key words like "proximate cause," without offering any support for such claims. Beyond mere labeling, Count 8 does not satisfy Rules 8 or 9(b).

The UCL "establishes three varieties of unfair competition – acts or practices which are unlawful, or unfair, or fraudulent." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 860 (9th Cir. 2018). To state a claim, Plaintiffs must have suffered "injury in fact and . . . lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. Plaintiffs fail to satisfy the requirements of the UCL.

**Unlawful Conduct.** "By proscribing *any unlawful* business practice," the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law" makes actionable. *Cel-Tech Comm'ns, Inc. v. L.A. Cell Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Plaintiffs seek to avail themselves of this borrowing by alleging that Wassgren engaged in "unlawful competition" by "aiding and abetting the breaches of fiduciary duties, fraudulent and

unfair conduct and unlawful conduct." Doc. 13 ¶ 205. But as shown throughout this motion, Plaintiffs fail to state claims that Wassgren violated any other law.

**Unfair Conduct.** The definition of "unfair" conduct is currently "in flux" among California courts. The better test is that conduct is "unfair" when it "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise threatens or harms competition." *Hodsdon*, 891 F.3d at 866. Plaintiffs invoke an older and "too amorphous" test that "provid[es] too little guidance to courts and businesses." *Cel-Tech*, 20 Cal. 4th at 185. They assert that Wassgren engaged in "unfair" conduct, which they defined as occurring when a practice "offend[s] public policy" or is "unethical, oppressive, and unscrupulous" and "substantially injurious to the public." Doc. 13 ¶ 206. The Court need not decide which test is appropriate because Plaintiffs do not present any *facts* supporting either legal standard. Such "formulaic recitation of the elements of a cause of action" is insufficient to state a claim. *Twombly*, 550 U.S. at 555.

**Fraud.** Plaintiffs do not allege that Wassgren's conduct independently violated the UCL's "fraud" provision. Moreover, the UCL does not provide for a free-standing aiding and abetting fraud liability. *Toy v. TriWire Eng'g Sols, Inc.*, 2010 WL 3448535, at *3 (N.D. Cal. Sept. 1, 2010). Where, as here, Plaintiffs' claims for aiding and abetting common law fraud and breach of fiduciary duty and statutory violations must be dismissed, the same is true of the UCL fraud claim.

**Causation.** Plaintiffs' UCL claims finally fail because they do not plausibly allege that they lost money or property "as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. By this language, the UCL imposes a causation requirement. *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 849 (2008), *as modified* (Jan. 28, 2008). Plaintiffs baldly claim that Wassgren's conduct was "a proximate cause of the injuries to Plaintiffs" and "caused and continues to cause substantial

injury to Plaintiffs, Doc. 13 ¶ 207, but as with the aiding and abetting claims, this formulaic allegation is insufficient under *Twombly* and *Iqbal*.

## VII.   THE NEVADA DECEPTIVE TRADE PRACTICES CLAIMS FAIL.

Plaintiffs' causes of action under Counts 22 and 23 for aiding and abetting violations of the Nevada Deceptive Trade Practices Act fail to state claims for relief. NRS § 598.092(8) provides that "[a] person engages in a 'deceptive trade practice' when in the course of his or her business . . . he or she . . . knowingly misrepresents the legal rights, obligations, or remedies of a party to a transaction." Plaintiffs allege in Count 22 that Wassgren violated the NRS by "drafting of the PPM" and making representations "to the sales agents that the EquiAlt Securities were exempt from registration under Federal and State securities laws and could be sold by unlicensed broker-dealers and sales representatives." Doc. 13 ¶ 324. As discussed above, Plaintiffs do not plausibly allege that Wassgren "knowingly" made any misrepresentation either in the PPMs or to the sales agents. *See* Section I.A. In fact, if EquiAlt had followed his advice—*e.g.,* not selling debentures to more than 35 non-accredited investors, as reflected in the offering materials—then EquiAlt's securities would have remained lawfully exempt from registration. Any deviation in how EquiAlt's Funds were set up and how EquiAlt operated them is on EquiAlt, not Wassgren.

Plaintiffs allege in Count 23 that Wassgren aided and abetted a violation of the Nevada Trade Practices Act ("NTPA"). No case, however, recognizes an aiding and abetting claim under the NTPA. *See Bertsch v. Discover Fin. Servs.*, 2020 WL 1170212, at *5 (D. Nev. Mar. 11, 2020) (NDTPA requires "an act of consumer fraud *by the defendant*" – not a third party who allegedly was assisted in committing the fraud by the defendant). In addition, as DLA has pointed out in its contemporaneously filed motion to dismiss, Plaintiffs improperly graft common law aiding and abetting claims onto statutory causes of action when the legislature has not authorized it. Finally,

even if permitted to raise an aiding and abetting claim here, Plaintiffs have failed to adequately plead it. Therefore, Counts 22 and 23 should be dismissed.

## VIII.   PLAINTIFFS' ELDER ABUSE CLAIM SHOULD BE DISMISSED.

With respect to the elder abuse claim in Count 7, the courts are divided on whether Cal. Welfare & Institutions Code § 15610.07 creates an independent cause of action. *Das v. Bank of Am., N.A.*, 186 Cal. App. 4th 727, 743 (2010). Assuming it does, Count 7 still fails.

The term "financial abuse" under the California Code differentiates between conduct of a primary actor for taking property of an elder, CW&IC § 15610.30(a)(1), and secondary actors who assist in this conduct, *id.* § 15610.30(a)(2). Plainly, subsection (1) does not apply because Wassgren did not personally take "property of an elder." Plaintiffs raise this claim anyway. Doc. 13 ¶ 200. As for subsection (2), an "assisting" claim requires a plaintiff to allege knowledge of and substantial assistance in the taking of property for a wrongful use or intent to defraud. *Das*, 186 Cal. App. 4th at 744-45. But as discussed above, Plaintiffs' aiding and abetting claims do not plausibly allege either actual knowledge of or substantial assistance in EquiAlt's purported Ponzi scheme. As under the common law, providing ordinary legal services, as Wassgren did as outside counsel for EquiAlt, is insufficient to establish liability in the absence of actual knowledge of EquiAlt's purportedly wrongful conduct. *Id.* at 745; *see also Freeney v. Bank of Am. Corp.*, 2016 WL 5897773, at *11 (C.D. Cal. Aug. 4, 2016) (allegation that defendant ignored red flags insufficient to satisfy knowledge component of assisting in elder abuse).

## CONCLUSION

In circumstances where a company, like EquiAlt, is accused of wrongdoing and is anticipated to fall short of meeting its obligations to investors, a lawyer, like Wassgren, and his current and former employers make for "inviting targets for lawsuits stemming from client wrongdoing." *El Camino Res.,* 722 F. Supp. 2d at 908. Lawyers are "vulnerable to the hindsight

accusation that they knew of the client's wrongdoing or were willfully blind." *Id.* But there is no "fraud by hindsight." *Denny v. Barber,* 576 F.2d 465, 470 (2d Cir. 1978) (Friendly, J.). Yet, hindsight is all Plaintiffs offer. Wassgren had no motive to engage in the fraudulent conduct Plaintiffs allege. And the "irrational" behavior Plaintiffs assign to Wassgren—that is, a supposed willingness to throw away a successful legal career for one client purportedly involved in a garden variety Ponzi scheme—requires a strong showing, and particularized allegations. *See Dileo*, 901 F.2d at 629 ("One who believes that another has behaved irrationally has to make a strong case."). "The complaint does not come close." *Id.* This Court does not have to accept, and should not accept, Plaintiffs' theory of the case. *See Am. Dental Ass'n v. Cigna Corp.,* 605 F.3d 1283, 1290 (11th Cir. 2010) ("[C]ourts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer.").

For the foregoing reasons, the Court should dismiss the amended complaint.

Dated: November 11, 2020                  Respectfully submitted,


*/s/ Simon A. Gaugush*
Simon A. Gaugush
Florida Bar No.  440050
D. Matthew Allen
Florida Bar No. 866326
Erin J. Hoyle
Florida Bar No. 117762
CARLTON FIELDS, P.A.
P.O. Box 3239
Tampa, FL 33601-3239
Telephone:  813.223.7000
Facsimile:  813.229.4133
E-mail:  sgaugush@carltonfields.com
E-mail:  mallen@carltonfields.com
E-mail:  ehoyle@carltonfields.com

*Counsel for Paul Wassgren*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 11, 2020, I electronically filed the foregoing with the Clerk of Court by using the Court's CM/ECF system, thereby serving this document on all attorneys of record in this case.

*/s/ Simon A. Gaugush*
Simon A. Gaugush
